J. Owen Murrin (SBN 75329)
Murrin Law Firm
7040 E. Los Santos Drive
Long Beach, California 90815
Phone:  562-342-3011
Fax:  562-724-7007
E-mail: jmurrin@murrinlawfirm.com
Attorneys for PLAINTIFFS Michael Holifield, et al.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MICHAEL HOLLIFIELD;**<br>**MICHAEL ANDERSON;**<br>**JANELLE ANDERSON;**<br>**LARRY CARLSON;**<br>**CATHERINE CARLSON;**<br>**THOMAS WAYNE CARLSON;**<br>**MARILYN L. CARLSON;**<br>**BENYAPA FEIG;**<br>**BERNARDO FEIG;**<br>**LINDA V. HILDEBRAND;**<br>**JOHN MILLHOLLON – TURNER;**<br>**JAVEN POYYAK;**<br>**CONNIE POYYAK;**<br>**RICHARD SHAON;**<br>**YVETTE SHAON;**<br><br>**PLAINTIFFS,**<br><br>**v.**<br><br>**RESOLUTE CAPITAL PARTNERS LTD;**<br>**LEGACY ENERGY, LLC;**<br>**PETROROCK MINERAL HOLDINGS, LLC; PRMH LENDERS FUND, LLC; PRMH LENDERS** | **Case No. 2:22-cv-07885-SB-RAO**<br><br>**THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS**<br>**1.  SECURITIES FRAUD (VIOLATION OF CORPORATE SECTION 25401)**<br>**2.  BREACH OF FIDUCIARY DUTY**<br>**3.  FRAUD/FALSE PROMISE**<br>**4.  FINANCIAL ELDER ABUSE (Welfare and Institution Code §15600 et sec.)**<br>**5.  VIOLATION SECTION 12(a)(1)]OF THE SECURITIES ACT (UNREGISTERED SECURITY))**<br>**6. BREACH OF CONTRACT/RECISSION**<br>**7.  CIVIL CODE §3372 VIOLATION**<br>**8.  CONSTRUCTIVE FRAUD**<br>**9. NEGLIGENCE AGAINST CHAPMAN COMPANIES** |

1

**FUND II; PRMH LENDERS FUND III, LLC; PRMH LENDERS FUND IV, LLC; SEA VII; CHOICE ENERGY HOLDINGS – I, LLC; CHOICE ENERGY HOLDINGS – III, LLC; THOMAS JOSEPH POWELL;
STEFAN TOTH; THOMAS CHAPMAN ; VELOCITY NORTH INVESTMENTS, INC.; CHAPMAN WEALTH STRATEGIES;
WARREN TARYLE; CAL.CODE OF CIV. PRO. §382 DEFENDANTS; DOES 1-300**

**DEFENDANTS.**

PLAINTIFFS, individually and on behalf of all other persons similarly situated, by PLAINTIFFS' undersigned attorneys, for PLAINTIFFS' complaint against DEFENDANTS (defined below) alleges the following based upon personal knowledge:

**PARTIES**

**PLAINTIFFS**

1.      At all times herein, PLAINTIFF MICHAEL HOLLIFIELD was and is a resident of the City of Long Beach, County of Los Angeles, State of California.

2.      At all times herein, PLAINTIFF JANELLE ANDERSON was and is a resident of City of Parker, County of Douglas, State of Colorado. At the time of the investment, JANELLE ANDERSON was a resident of the City of LaVerne, County of Los Angeles, State of California.

3.      At all times herein, PLAINTIFF MICHAEL ANDERSON was and is a resident

2

of city of Parker, County of Douglas State of Colorado. At the time of the investment, MICHAEL ANDERSON was a resident of the City of LaVerne, County of Los Angeles, State of California.

4.      At all times herein, PLAINTIFF CATHERINE CARLSON is and was a resident of the City of Carlsbad, County of San Diego, State of California.

5.      At all times herein, PLAINTIFF LARRY CARLSON is and was a resident of the City of Carlsbad, County of San Diego, State of California.

6.      At all times herein, PLAINTIFF MARILYN L. CARLSON is and was a resident of the City of New Braunfels, County of Comal, State of Texas.

7.      At all times herein, PLAINTIFF THOMAS WAYNE CARLSON is and was a resident of the City of New Braunfels, County of Comal, State of Texas.

8.      At all times herein, PLAINTIFF BENYAPA FEIG is and was a resident of the City of Redding, County of Shasta, State of California.

9.      At all times herein, PLAINTIFF BERNARDO FEIG is and was a resident of the City of Redding, County of Shasta, State of California.

10.      At all times herein, PLAINTIFF LINDA V. HILDEBRAND was and is a resident of the City of San Jose, County of Santa Clara, State of California.

11.      At all times herein, PLAINTIFF JOHN MILLHOLLON – TURNER was and is a resident of the City of Highland, County of San Bernardino, State of California.

12.      At all times herein, PLAINTIFF JAVEN POYYAK was and is a resident of the City of Lake Forest, County of Orange, State of California.

3

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

13.    At all times herein, PLAINTIFF CONNIE POYYAK was and is a resident of the City of Lake Forest, County of Orange, State of California.

14.    At all times herein, PLAINTIFF RICHARD SHAON was and is a resident of the City of La Palma, County of Orange, State of California.

15.    At all times herein, PLAINTIFF YVETTE SHAON was and is a resident of the City of La Palma, County of Orange, State of California.

## DEFENDANTS

16.    At all times herein, RESOLUTE CAPITAL PARTNERS LTD., LLC, hereinafter referred to as "RCP" or "Resolute Capital Partners", is a foreign limited liability company organized under the laws of the State of Nevada, with its principal place of business at either One Embarcadero Center, Suite 566, San Francisco, California 94111 or One Market Street, Suite 3600, San Francisco, California, 94105 with additional offices in Dallas and Minneapolis.

17.    At all times herein, LEGACY ENERGY, LLC, hereinafter referred to as "LEGACY," is a limited liability company organized under the laws of the State of Delaware, with a principal office in Irving, Texas. RCP is the managing member of LEGACY, and for PETROROCK MINERAL HOLDINGS, LLC, is its sole member. It is a company used by other DEFENDANTS to assist in carrying out the programs described herein.

18.    At all times herein, PETROROCK MINERAL HOLDINGS, LLC, hereinafter referred to as "PETROROCK," is a limited liability company organized under the laws of

4

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

the State of Texas with its principal place of business at 6321 Campus Circle Dr. E., Irving,

Texas 75063-2712. PETROROCK's sole managing member is Home Bound Financial

Group, LP, located at 1303 W. Walnut Hill Lane, Suite 305, Irving, Texas 75038-2965.

19.      At all times herein, PRMH LENDERS FUND, LLC, hereinafter referred to as

"PRMH" is a Nevada limited liability company doing business out of Irving, Texas.

20.      At all times herein, PRMH LENDERS FUND II, LLC, hereinafter referred to as

"PRMH" is a Nevada limited liability company doing business out of Irving, Texas.

21.      At all times herein, PRMH LENDERS FUND III, LLC, hereinafter referred to

as "PRMH" is a Nevada limited liability company doing business out of Irving, Texas.

22.      At all times herein, PRMH LENDERS FUND IV, LLC, hereinafter referred to

as "PRMH" is a Nevada limited liability company doing business out of Irving, Texas.

23.      At all times herein, THOMAS JOSEPH POWELL (CRD # 5573929), an

individual. He is believed to be a current resident of Reno, Nevada and is or was also

believed to be a resident of the City of San Francisco, County of San Francisco, State of

California. He is the owner and/or Senior Managing Partner of RESOLUTE CAPITAL

PARTNERS LTD., LLC (RCP).

24.      At all times herein, STEFAN TOTH is an individual who resides in Frisco,

Texas. STEFAN TOTH is the founder, co-owner, chairman, and CEO of HBFG, and was

a seller of these products and also operates its subsidiaries, including HB, HBR, and

PETROROCK.

25.      At all times, CHOICE ENERGY HOLDINGS, LLC; CHOICE ENERGY

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

HOLDINGS - I, LLC; CHOICE ENERGY HOLDINGS – III, LLC were a Nevada limited liability companies doing business out of Irving, Texas.

26.     At all times, SEA VII, LLC is a Nevada limited liability company doing business out of Irving, Texas.

27.     At all times herein, THOMAS CHAPMAN AND TARYLE was a resident of Orange County, California, now residing in Kettle Falls, Washington. He and his companies are sometimes referred to as the "CHAPMAN AND TARYLE DEFENDANTS."

28.     At all times herein, VELOCITY NORTH INVESTMENTS, INC. is the company used by THOMAS CHAPMAN AND TARYLE for his wealth management activities. This is a one of THOMAS CHAPMAN AND TARYLE's companies, sometimes referred to as a CHAPMAN AND TARYLE DEFENDANTS.

29.     At all times herein, CHAPMAN AND TARYLE WEALTH STRATEGIES is the company used by THOMAS CHAPMAN AND TARYLE for his financial services business..

30.     PLAINTIFFS are informed and believe and upon such information and belief allege that DEFENDANTS, DOES 1-300, inclusive, at all relevant times, were residents of or doing business in Los Angeles County, California, and that each of these fictitiously named DEFENDANTS are responsible for the acts and/or omissions herein alleged, and that PLAINTIFFS' injuries and damages as herein alleged were proximately caused by the acts and/or omissions of such fictitiously named DEFENDANTS.

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

31.     PLAINTIFFS are unaware of the true and accurate names and capacities of DOE DEFENDANTS sued herein as DOES 1-300 and therefore sues those DEFENDANTS by such fictitious names. PLAINTIFFS will seek leave to amend this Complaint to allege their true and accurate names and capacities when ascertained.

## JURISDICTION & VENUE

32.     At all times herein, all PLAINTIFFS reside in California, all alleged investment and loan agreements were entered into in California, and DEFENDANTS directed all activities and contacts towards entering into the said agreements in California.

## GENERAL ALLEGATIONS

33.     Promises were made to about 4,400 investors - of which PLAINTIFFS are just a few - through various marketing materials produced by Petrorock and its investment marketing affiliates, loan contracts and equity sales, all of which were under the control of TOTH, POWELL, and their affiliated companies.

34.     These promises were personally made to PLAINTIFFS by salesmen and finders including CHAPMAN AND TARYLE, PONDER, and others. These materials stated that Petrorock would purchase/lease oil well sites in certain areas. The marketing materials called this "the largest oil deposit ever found in US discovered in Texas." PLAINTIFFS were told the black gold would flow and the investors would get a high rate of return on their investments.

35.     These statements and promises were false. The investments were supported by funds produced by selling future investments. In fact, the oil fields had unproven reserves,

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

were exploratory and wildcat in nature. Yet this investment was sold as having oil fields capable of supporting PLAINTIFFS with profit and interest that would support them or their retirement needs.

36.     These marketing materials and contracts were sold in-person through salespeople, including CHAPMAN AND TARYLE and PONDER. PLAINTIFFS were told that the investments were to be secured with a 20% reserve so the investments would be safe. Language in the Petrorock brochure assured the safety of having these reserves for all fund investors. Investors were told by CHAPMAN AND TARYLE and PONDER through brochures provided by them that a margin of safety would be maintained.  This, in fact, was false. There never was a margin of safety as represented. The investments were not safe.

37.     Further, Petrorock and the affiliated investment funds, sold by PONDER and CHAPMAN AND TARYLE, claimed that the funds and investments in Petrorock were capable of producing, through Petrorock's superior management techniques, significantly more oil than previous operators. This was not true, but TOTH and POWELL, through CHAPMAN AND TARYLE, PONDER, and their companies, deceived the investors into thinking Petrorock had a superior ability and could capitalize where others failed. In fact, PLAINTIFFS were never told that PETROROCK never had adequate cash flow to service the debts and pay equity owners pursuant to the loan and equity contracts. PLAINTIFFS were also never told that POWELL, TOTH, and their companies had special personal access to the investor's funds. PONDER, CHAPMAN AND TARYLE, and their

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

companies fostered these and other false concepts to sell the product to PLAINTIFFS. TOTH, POWELL, and RCP also followed suit.

38.     As part of the sales process, CHAPMAN AND TARYLE, RCP, TOTH, and POWELL continued to sell investments to PLAINTIFFS by promising rates of return that were higher than DEFENDANTS knew could be produced. In fact, in 2018, DEFENDANTS' whole operation was on its knees, unable to pay bills and generate enough income to develop the plan they were promising investors, including all PLAINTIFFS herein. Yet, DEFENDANTS continued to raise funds under false pretenses.

39.     DEFENDANTS TOTH, CHAPMAN AND TARYLE, RCP, and POWELL did not tell PLAINTIFFS they were the subject of an SEC investigation which started in 2017 or that by 2018 they were on the brink of insolvency, that they were going to have to modify their original plans going from wildcatting to focus on "proven reserves" to continue to entice investors. TOTH, CHAPMAN AND TARYLE, RCP, and POWELL knew they were not going to meet their projections or even succeed well before 2017. This is the reason for the SEC investigation.

40.     Still, they continued with the same marketing presentations, materials and sales strategy which was now a false narrative on which the PLAINTIFFS and like investors reasonably relied. TOTH, CHAPMAN AND TARYLE, RCP, and POWELL never disclosed the ongoing SEC investigation and kept selling as if nothing happened. The majority of PLAINTIFFS investments were made after the SEC had already started their investigation in 2017, and the plan was to falsely characterize the investment as based on

"proven reserves." The SEC investigation was not properly disclosed.

41.    Defendant POWELL and Defendant TOTH used RCP to market the investments sold to PLAINTIFFS.

42.    These investment funds were sold to investors through both debt and equity funds.  The funds have all gone defunct and insolvent, leaving PLAINTIFFS with the losses which are the subject matter of this suit.

43.    All of the PLAINTIFF investors were retail investors who were not sophisticated in these matters. Some investors were accredited investors at the time of purchase, some were not accredited. PLAINTIFF investors relied heavily on marketing and promotional material and the sales force, which were all controlled by DEFENDANTS.  The sales materials contained the touted misinformation alleged herein.

44.    DEFENDANTS' offerings and use of unregistered salespersons and security subjected TOTH and POWELL to regulatory action by the Securities and Exchange Commission SEC Admin Proceeding No. 3-20597.

45.    TOTH and POWELL were sanctioned by State regulatory agencies such as the State of Washington Department of Financial Institutions Securities Division.  On May 7, 2021, the State of Washington Department of Financial Institutions Securities Division entered a consent order No.: S-19-2672-20-CO0. CHAPMAN AND TARYLE knew this.

46.    PLAINTIFF investors were sold investment funds through an elaborate organization and chain of distribution, all sponsored, supervised, monitored, manipulated, controlled, and/or owned by POWELL, TOTH, RCP, and the CHAPMAN AND TARYLE

10

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

DEFENDANTS.

47.    TOTH and POWELL combined their skills, resources, and prior organizations and created a wagon wheel consortium and conspiracy with PETROROCK with salesmen like CHAPMAN AND TARYLE at the center. As noted, PETROROCK was a consortium or joint enterprise of numerous people and companies that was sold as something the funds were to support and return for a share of its profits.

48.    CHAPMAN AND TARYLE represented that the above companies and funds had the ability to take investor money as either loans or equity to turn their money into profits or interest in loans that would go back to investors. Unfortunately, that was a purposeful deception made by TOTH and POWELL to CHAPMAN AND TARYLE to foster more sales.

49.    Below is a chart of the investments sold by CHAPMAN AND TARYLE and PONDER showing the date of investment, dollar amount of investment, all documents signed by either TOTH or POWELL and/or received by PLAINTIFFS, the entities to whom the loans were made, the entities/persons making misrepresentations and whether the loans were made from retirement accounts, or IRAs:

**Chart 1:  Investment Details for Each individual PLAINTIFF**

**LEGEND of Abbreviations**

**BLA**  -   Business Loan Agreement

**BPN**  -   Business Promissory Note

**LA**    -   Loan Agreement

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

**PN** - Promissory Note

**UG** - Unconditional Guaranty

**IA** - Investment Agreement

**CIDD**- Confidential Investor Disclosure Document

**\*\*** - The actual sellers are the Resolute Companies, Homebound Companies, PetroRock and Mercury Operating, using the funds as facilitators.**

**LB** - Legacy Brochure

**CBLDD**-Confidential Business Loan Disclosure Document

**PNA** - Promissory Note Amendment

**LAA** - Loan Agreement Amendment

| # | Date | Investor | Amount/Sales Agent/Interest Rate | Documents Received | Company/Fund Investing/Loaning (Seller) | Misrepresentation Refer to Footnote 1[1] | IRA / 401k |
|---|------|----------|-----------------------------------|--------------------|------------------------------------------|-------------------------------------------|------------|
|   |      |          |                                   |                    |                                          |                                           |            |

---

[1] Toth and Powell used their Agents (as set forth in "Amount" column) and their funds listed in "Company Investing/Loaning" column to sell this investment to PLAINTIFF(s). The entity listed in the "Company/Fund" column is the transferor of the funds. Sales on the dates as listed in the second column were the results of oral communications in the weeks prior to the sales. Verbal misrepresentations made to PLAINTIFF(s) are referenced throughout the Third Amended Complaint include, inter alia, vastly inflated oil well production/ projections, that the loans and/or equity investments were secured and safe retirement investments. Other information such the ongoing SEC investigation which commenced in 2017 and the fact the securities and sellers were not registered by State or federal entities was concealed. Oral communications with CHAPMAN/Agents also occurred on the date of sale and include all of the misrepresentations in the BLA, BPN, LA, PN, UG, IA and CIDD as listed, all of which were available on the date of the actual sale. The actual sale was made on a web portal. All loan and related documents were electronically executed by TOTH and/or POWELL. PLAINTIFF(s) also received brochures containing false and misleading information and false tax information during in person meetings with Agent and in the mail and via electronic communications. Full details are set forth throughout the Third Amended Complaint. Other false information was received from company web sites.

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

| 1 | 7/2/2018 | Michael HOLLIFIELD | $490,000 Agent: Tom CHAPMAN AND TARYLE 9.5% Interest | BPN; BLA; UG; LB | Loan — Legacy Energy, LLC **see above for all sellers** | | X |
|---|---|---|---|---|---|---|---|

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

| # | Date | Investor | Amount/Sales Agent/Interest Rate | Documents Received | Company/Fund Investing/Loaning (Seller) | Misrepresentation Refer to Footnote 1[2] | IRA / 401k |
|---|---|---|---|---|---|---|---|
| 2 | 9/26/17 | Michael HOLLIFIELD | $100,000<br><br>Agent: Tom CHAPMAN AND TARYLE<br>7.5% Interest | | Loan – PRHM Lenders Fund II LLC<br><br>**see above** | | |
| 3 | 1/31/19 | Michael HOLLIFIELD | $200,000<br><br>Agent: Tom CHAPMAN AND TARYLE<br><br>8.5% Interest | BPN; BLA; UG; CBLDD | Loan – Choice Energy Holdings III, LLC<br><br>** see above** | | |
| 4 | 11/26/18 | Michael HOLLIFIELD | $100,000<br><br>Agent: Tom CHAPMAN AND TARYLE<br><br>Equity | IA; CIDD | Investment Equity – Strategic Entergy Assets VII, LLC<br><br>** | | |

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

| # | Date | Investor | Amount/Sales Agent/Interest Rate | Documents Received | Company/Fund Investing/Loaning (Seller) | Misrepresentation Refer to Footnote 1[3] | IRA / 401k |
|---|------|----------|----------------------------------|--------------------|-----------------------------------------|------------------------------------------|------------|
| 5 | 5/20/19 | Javen Noel POYYAK<br><br>Agent: Tom CHAPMAN AND TARYLE<br><br>8.5% Interest | $100,000 | BPN; BLA; UG | Legacy Energy, LLC (03320) or Choice III (05477)<br><br>** | | |
| 6 | 5/23/18 | Javen Noel POYYAK<br><br>Agent: Tom CHAPMAN AND TARYLE<br><br>9% Interest | $50,000 | BPN; BLA; UG; LB | Loan – Legacy Energy, LLC (03173)<br><br>** | | |
| 7 | 4/4/19 | Connie POYYAK<br><br>Agent: Tom CHAPMAN AND TARYLE | $63,000 | BPN; BLA; CBLDD; UG | Loan – Choice Energy Holdings III, LLC (05370) | | X |

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

| # | Date | Investor | Amount/Sales Agent/Interest Rate | Documents Received | Company/Fund Investing/Loaning (Seller) | Misrepresentation Refer to Footnote 1 | IRA / 401k |
|---|------|----------|------|------|------|------|------|
| | | | 8.5% Interest | | | | |
| 8 | 8/17/17 Amended 6/1/18 | Richard Shaon | $274,000 Agent: Tom CHAPMAN AND TARYLE 9% Interest | LA; PN; PNA | Loan – PRHM Lenders Fund II LLC ** | | X |
| 9 | 9/20/19 | Richard Shaon | $50,000 Agent: Tom CHAPMAN AND TARYLE Equity | Quarterly Statement | Investment Equity – Strategic Energy Assets VII, LLC ** | | X |
| # | Date | Investor | Amount/Sales Agent/Interest Rate | Documents Received | Company/Fund Investing/Loaning (Seller) | Misrepresentation Refer to Footnote 1[4] | IRA / 401k |
| 10 | 9/3/19 | Yvette Shaon | $50,000 Agent: Tom CHAPMAN AND TARYLE Equity | IA; CIDD | Investment Equity – Strategic Energy Assets VII, LLC ** | | X |

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

| # | Date | Investor | Amount/Sales Agent/Interest Rate | Documents Received | Company/Fund Investing/Loaning (Seller) | Misrepresentation Refer to Footnote 1[5] | IRA / 401k |
|---|---|---|---|---|---|---|---|
| 11 | 4/10/18 | Linda V. Hildebrand | $50,000<br><br>Agent: Tom CHAPMAN AND TARYLE<br><br>7.5% Interest | BPN; BLA | Loan – Choice Energy Holdings-I, LLC (02910)<br><br>** | | X |
| 12 | 4/28/17 | Linda V. Hildebrand | $50,000<br><br>Agent: Tom CHAPMAN AND TARYLE<br><br>7.5% Interest | PN | Loan – PRMH Lenders Fund, LLC (This became Choice Energy)<br><br>** | | |
| 13 | 7/18/18 | Michael Anderson | $256,000<br>Agent: Tom CHAPMAN AND TARYLE<br><br>9.5% Interest | BPN; BLA; CBLDD | Loan – Legacy Energy, LLC (03812)<br>** | | X |
| # | Date | Investor | Amount/Sales Agent/Interest Rate | Documents Received | Company/Fund Investing/Loaning (Seller) | Misrepresentation Refer to Footnote 1[5] | IRA / 401k |
| 14 | 6/27/17 | Larry Carlson IRA | $114,000 | PN; LA; | Loan – PRMH Lenders Fund, | | X |

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

| # | Date | Investor | Amount/Sales Agent/Interest Rate | Documents Received | Company/Fund Investing/Loaning (Seller) | Misrepresentation Refer to Footnote 1[6] | IRA / 401k |
|---|---|---|---|---|---|---|---|
| | | | Agent: Stefan TOTH 9% Interest | | LLC ** | | |
| 15 | 11/28/17 | Catherine Carlson, IRA | $65,000 Agent: Stefan TOTH 9% Interest | PN; LA | Loan – PRMH Lenders Fund III, LLC (24 months) ** | | X |
| 16 | 2/13/18 | Thomas & Marilyn L. Carlson | $80,000 Agent: Tom CHAPMAN AND TARYLE 8.5% Interest | Loan Summary; PN | Loan – PRMH Lenders Fund IV, LLC (12 months) **see above** | | |
| 17 | 3/21/20 | Thomas & Marilyn L. Carlson | $75,000 Agent: Tom CHAPMAN AND TARYLE 8.5% Interest | BPN; PetroRock Brochure; Tax Advantages | Loan – Choice Energy Holdings III, LLC (24 months) | | |
| # | Date | Investor | Amount/Sales Agent/Interest Rate | Documents Received | Company/Fund Investing/Loaning (Seller) | Misrepresentation Refer to Footnote 1[6] | IRA / 401k |

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

| 18 | 6/8/20 | John Millhollon-Turner IRA | $100,000<br><br>Agent: Steve Tahoya<br><br>6.75 | Confidential Private Placement Memo; LLC Agreement | Loan – Advantage Capital Holdings IV Fund LLC Equity<br><br>** | | X |
| 19 | 12/6/18 | Bernardo & Benyapa Feig | $75,000<br><br>Agent: Dr. Craig A. PONDER, Sr. | IA; CIDD | Investment equity – Strategic Energy Assets VII, LLC<br><br>** | | |

50.     The following are specifics applicable to each listed PLAINTIFF:

**HOLLIFIELD**:

51.     HOLLIFIELD was told by CHAPMAN AND TARYLE (the agent set forth in the Chart 1) that production associated with the SEA VII program was producing or expected to produce over 2,210 barrels per day when it only produced 199 barrels per day. The SEC investigation that resulted in the cease-and-desist order found that various defendant programs were projected to produce 500 barrels a day, but the actual production, according to the SEC was that these three programs were only producing 3-5 barrels a day each.

52.     When CHAPMAN AND TARYLE originally introduced these investments to HOLLIFIELD, CHAPMAN AND TARYLE represented that the investment in any of the funds was suitable for conservative retirement and IRA money.  HOLLIFIELD's first

19

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

investment was with IRA money (as shown in the chart).

53.     HOLLIFIELD was told by CHAPMAN AND TARYLE that the money he invested (in the debt funds) was fully secured and available upon demand, assuming HOLLIFIELD gave reasonable notice. HOLLIFIELD chose not to renew and gave timely notice. HOLLIFIELD never received his money back on any debt fund. HOLLIFIELD obtained this false information that the money was available upon demand from the agent CHAPMAN AND TARYLE and materials given to him to read.

54.     HOLLIFIELD was told the funds he was investing in were being run by persons with a "track record" and were "high level" professionals. This was and is false. This was language used by CHAPMAN AND TARYLE and is also used in brochures produced by TOTH and POWELL for each of the funds in which HOLLIFIELD invested.

55.     HOLLIFIELD was informed by the materials he received that the organization running the investment was bound by loan covenants that provided a margin of safety that included a 20% reserve and had a loan to value of 200 percent of certain assets. CHAPMAN AND TARYLE specifically confirmed that there were adequate assets held by the investment organization sufficient to protect investors and to assure the investments were sound.

56.     HOLLIFIELD was told there were oil and gas tax deductions and tax benefits he would receive for his investment.  These were not true as to HOLLIFIELD's IRA money because such deductions or tax benefits are not allowed in IRA accounts.  He was not told this by CHAPMAN AND TARYLE or anyone in the organization. Tax deduction and tax

20

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

benefit availability was one of the inducements for HOLLIFIELD to invest his IRA money to purchase the above oil and gas investments.

57.    Throughout the Complaint various items of concealment are noted that apply to all PLAINTIFFS equally and which are adopted and incorporated by reference as though fully set forth hereat.

58.    This PLAINTIFF also had direct contact through DEFENDANTS' website where a lot of communication came from TOTH and POWELL, but it all was used to confirm the false narrative that this investment was producing at the level represented and suitable for retirement or soon to be retirement and conservative investment money.

59.    HOLLIFIELD was discouraged by CHAPMAN AND TARYLE from reviewing the investment contracts and related documents, being told not to worry about the small print as it was just standard boilerplate language.  The small print, which was over multiple documents and vague and confusing - vitiated the guarantees that the investments were secured and safe for retirement investment – fraud in the factum.

**JAVEN NOEL POYYAK:**

60.    CHAPMAN and TARYLE told POYYAK that production associated with his investment program was operating so he would obtain a great return on his investment.

61.    CHAPMAN and TARYLE told POYYAK the money he invested was fully secured and available upon demand.  This was false and known by CHAPMAN AND TARYLE to have been false at the time he made these representations to POYYAK.

62.    CHAPMAN and TARYLE told POYYAK the funds he was investing in were

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

being run by persons with a "track record" and were "high-level" professionals. This was known to be false at the time CHAPMAN and TARYLE made these representations.

63.     POYYAK read in materials received from TOTH, POWELL and CHAPMAN and TARYLE that the organization running the investment was bound by loan covenants that provided a margin of safety that included 20% reserve and had a loan to value of 200 percent of certain assets. It was specifically confirmed by the agent listed in the chart that there were adequate assets held by the investment organization which were sufficient to protect investors and to assure the investments were sound. This is also supported by Exhibit 2, which is an exemplar of what was promised in similar marketing materials.

64.     POYYAK was told by CHAPMAN and TARYLE he was investing in a reputable organization that had broker-dealer backing implying that they were legal and registered. They were not. POYYAK never received the required PPM that all persons working with a broker-dealer would have received.  The PPM would have informed PLAINTIFF of deficiencies that would make it known to this PLAINTIFF that it was not a good investment.

65.     It was implied from the information PLAINTIFF received talking with CHAPMAN and TARYLE and reading materials that the security purchased (the investments) were legal, registered and viable.

66.     POYYAK also had direct contact through DEFENDANTS' website where a lot of communication came from TOTH and POWELL but it all was used to confirm the false assumptions about this investment that it was producing at the level represented and

22

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

suitable as a retirement investment or soon to be retirement and conservative, safe investment (when in fact this was not true and was known not to be true by all the persons listed in the chart for all those reasons listed in the chart and throughout this complaint).

67.    This PLAINTIFF was told by CHAPMAN and TARYLE to sign the documents and not worry about the small print - more detail is incorporated from other allegations in the complaint about what else PLAINTIFF was told upon signing the investment documents but mainly PLAINTIFF was advised by CHAPMAN and TARYLE, who POYYAK thought was his investment advisor, not to worry about details that is just boilerplate language and "not applicable to you."

**CONNIE POYYAK**:

68.    CONNIE POYYAK was told by CHAPMAN and TARYLE that production associated PLAINTIFF's investment program was operating so this PLAINTIFF would obtain a great return on this PLAINTIFF's investment.

69.    CHAPMAN and TARYLE told CONNIE POYYAK was told the money that PLAINTIFF invested was fully secured and available upon demand.  Similar statements that the investments were secured were made in brochures drafted and provided by TOTH and POWELL.  This was false and known to have been false when made by CHAPMAN AND TARYLE.

70.    CHAPMAN and TARYLE told CONNIE POYYAK that the funds PLAINTIFF was investing in were being run by persons with a "track record" and were "high level" professionals. This was and is false.

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

71.    CONNIE POYYAK read in materials received that the organization running the investment was bound by loan covenants that provided a margin of safety that included 20% reserve and had loan to value of 200 percent on certain assets.  It was specifically confirmed by the agent listed in the chart that there were adequate assets held by the investment organization sufficient to protect investors including this PLAINTIFF and to assure the investments were sound. These were knowingly false representations.

72.    CONNIE POYYAK was told this investment was with a reputable organization that had broker-dealer backing implying that they were legal and registered. They were not.

**RICHARD SHAON**:

73.    SHAON was told by CHAPMAN and TARYLE that production associated with the SEA VII program was producing or expected to produce over 2,210 barrels per day when it only produced 199 barrels per day.  The SEC investigation that resulted in the cease-and-desist order found that various Defendant marketing materials which projected investments of 500 barrels a day on several projects were only producing 3-5 barrels a day each.

74.    When SHAON was originally introduced to CHAPMAN and TARYLE, CHAPMAN and TARYLE told him that the investment in any of the funds was suitable for conservative retirement and IRA money.  His first investment was with IRA money.

75.    He was told by CHAPMAN and TARYLE the money he invested was fully secured and available upon demand assuming reasonable notice was given based on his

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

decision to not renew.   This representation was knowingly false when made. It is alleged this promise of early repayment was a deceit put in all the agreements to cause him to invest when DEFENDANTS had no intention of carrying it out.

76.      SHAON was told by CHAPMAN and TARYLE the funds he was investing in were being run by persons with a "track record" and were "high level" professionals. This was and is knowingly false.

77.      SHAON was told by the materials received that the organization running the investment was bound by loan covenants that provided a margin of safety that included a 20% reserve and had loan to value of 200 percent of certain assets.  SHAON specifically confirmed with CHAPMAN and TARYLE that there were assets held by the investment organization sufficient to protect investors and to assure the investments were sound. These representations were also knowingly false when made.

78.      SHAON was told by CHAPMAN and TARYLE and through marketing brochures provided to him by CHAPMAN and TARYLE of oil and gas tax deductions and tax benefits he would receive which were knowingly untrue.  IRA deductions or tax benefits are not allowed for IRA accounts.

79.      SHAON was told by CHAPMAN and TARYLE that he was investing in a reputable organization that had broker-dealer backing implying that they were legal and registered. They were not.

80.      It was implied the security purchased (the investments) were legal, registered and viable.  They were not and all DEFENDANTS knew they were not.

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

81.    The disclosure documents of one of the investments SHAON invested in claimed

a 12-month reserve for debt service, based on $25MM @ 9% interest rate. It assumed a

15% lease operating expense.  DEFENDANTS used $100,000 as an example of a typical

investment – with a yield cash flow from production to the investor of $91,714 over a 5-

year hold, with an average monthly cash flow of $1,911 (commencing in year 2).  These

were all knowingly false statements.

**YVETTE SHOAN:**

82.    Specifically, SHOAN was told by CHAPMAN and TARYLE that production

associated with SHOAN'S investment program was operating so SHOAN would obtain a

great return on her investment.

83.    SHOAN was told the money she invested was fully secured and available upon

demand.   That has not proven to be the case and for reasons discussed below was never

possible so this was an outright deceit perpetrated by the agents listed in the chart.

84.    PLAINTIFF SHOAN was told the funds PLAINTIFF was investing in were

being run by persons with a "track record" and were "high level" professionals. This was

and is false and or was used in misleading manner.  This was language used by the agent

in charge and also language used in brochures read by SHOAN.

85.    SHOAN read in materials received that the organization running the investment

was bound by loan covenants that provided a margin of safety that included 20% reserve

and had loan to value of 200 percent of a certain asset. These were all knowingly false

representations when made.

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

86.     SHOAN was told of oil and gas tax deductions and tax benefits this PLAINTIFF would receive which have not turned out because deductions or tax benefits are not allowed in IRA accounts.  SHOAN was not told by CHAPMAN and TARYLE or anyone in the organization and made investments in an IRA. SHOAN's IRA investments are shown in the chart. Tax deduction and tax benefit availability was one of the inducements for this PLAINTIFF to invest IRA money in this so-called oil and gas investment. SHOAN was promised these benefits by this PLAINTIFF's agent listed in the chart and in various marketing brochures given to SHOAN by the agent and produced by TOTH and POWELL and their companies.

87.     SHOAN was told by DEFENDANTS that this investment was with a reputable organization that had broker- dealer backing, implying that they were legal and registered. They were not.

88.     It was implied from the information SHOAN received talking with this PLAINTIFF's agent and reading materials that the security purchased (the investments) were legal, registered and viable when it was not.

89.     The disclosure documents of one of the investments SHOAN invested in claimed a 12-month reserve for debt service, based on $25MM @ 9% interest rate. It assumed a 15% lease operating expense.  DEFENDANTS used $100,000 as an example of a typical investment – with a yield cash flow from production to the investor of $91,714 over a 5-year hold, with an average monthly cash flow of $1,911 (commencing in year 2).  These were all knowingly false representations without any facts supporting them.

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

90.    Specifically, SHOAN was told by CHAPMAN and TARYLE that production associated with her  investment was operating so she would obtain a great return.

91.    SHOAN was told by DEFENDANTS the money she invested was fully secured and available upon demand.   This was knowingly untrue.

92.    SHOAN was told the funds she was investing in were being run by persons with a "track record" and were high level professionals. These statements were knowingly untrue when made by DEFENDANTS.

**LINDA HILDEBRAND**:

93.    HILDEBRAND read in materials received that the organization running the investment was bound by loan covenants that provided a margin of safety that included 20% reserve and had loan to value of 200 percent of certain assets. It was specifically confirmed by the agent listed in the chart that there were adequate assets held by the investment organization sufficient to protect investors including HILDEBRAND's.

94.    HILDEBRAND was assured of oil and gas tax deductions and tax benefits she would receive which were knowingly false when made because they are not allowed with IRA accounts.  This PLAINTIFF was not told this by the agent in the chart CHAPMAN and TARYLE or anyone in the organization and made investments in an IRA.

95.    It was implied from the information PLAINTIFF received talking with this PLAINTIFF's agent and reading materials that the security purchased (the investments) were legal, registered and viable when they were not.

/ / / /

28

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

**MICHAEL ANDERSON**:

96.     Specifically ANDERSON was told by CHAPMAN and TARYLE that production associated with this PLAINTIFF's investment program was operating so this PLAINTIFF would obtain a great return on this PLAINTIFF's investment.

97.     ANDERSON was told the money he as was fully secured and available upon demand.   That was known to be false at the time this statement was made.

98.     ANDERSON was told the funds he was investing in were being run by persons with a "track record" and were high level professionals. This was a knowingly false statement when made.

99.     ANDERSON read in materials received that the organization running the investment was bound by loan covenants that provided a margin of safety that included 20 percent and had loan to value of 200 percent. It was specifically confirmed by the agent listed in the chart that there was adequate assets held by the investment organization sufficient enough to protect investors including ANDERSON and to assure the investments were sound. These representations were knowingly false when made.

100.    ANDERSON was told of oil and gas tax deductions and tax benefits he would receive, all of which were knowingly untrue when made by the agents because deductions or tax benefits are not allowed in IRA accounts. ANDERSON's IRA investments are shown in the chart. Tax deduction and tax benefit availability was one of the inducements for ANDERSON to invest IRA money in this so-called oil and gas investment.

101.    ANDERSON was told this investment was with a reputable organization that

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

had broker-dealer backing, implying that they were legal and registered. They were not. ANDERSON was told this by the agent listed in the chart that sold him the investments and it is implied in the agreements.

**LARRY CARLSON**:

102.    Specifically CARLSON was told by the CHAPMAN and TARYLE that production associated with this PLAINTIFF's investment program was operating so CARLSON would obtain a great return on this PLAINTIFF's investment.

103.    CARLSON was told the money he invested was fully secured and available upon demand.   This was a knowingly false statement when made.

104.    CARLSON was told companies he was investing in were being run by persons with a "track record" and were high level professionals. This was a knowingly false statement when made.

105.    CARLSON read in materials received that the organization running the investment was bound by loan covenants that provided a margin of safety that included 20 percent and had loan to value of 200 percent of a certain asset. These knowingly false misrepresentations were confirmed by the agent listed in the chart that there was adequate assets held by the investment organization sufficient enough to protect investors including this PLAINTIFF and to assure the investments were sound.

106.    CARLSON was told of oil and gas tax deductions and tax benefits he would receive which were knowingly false when made because such tax benefits do not apply to IRA accounts.   CARLSON was not told this this fact by CHAPMAN and TARYLE or

anyone in the organization and he subsequently made investments with IRA money.

107. **CATHERINE CARLSON**:

108.    Specifically CATHERINE CARLSON was told by CHAPMAN and TARYLE that production associated with CATHERINE CARLSON'S investment program was operating so she would obtain a great return on this PLAINTIFF's investment.

109.    CATHERINE CARLSON was told the money she invested was fully secured and available upon demand.   This was a knowingly false statement when made.

110.    CATHERINE CARLSON was told the funds PLAINTIFF was investing in were being run by persons with a "track record" and were high level professionals. This was a knowingly false statement when made.

111.    CATHERINE CARLSON read in materials received that the organization running the investment was bound by loan covenants that provided a margin of safety that included 20% reserve and had loan to value of 200 percent of a certain asset. This was a knowingly false statement when made.

112.    CATHERINE CARLSON was told of oil and gas tax deductions and tax benefits she would receive which were k knowingly false statements when made to her because such tax benefits are not allowed in IRA accounts.

113.    This PLAINTIFF was told this investment was with a reputable organization that had broker- dealer backing implying that they were legal and registered. They were not. This PLAINTIFF was told this by the agent listed in the chart that sold him the investments and it is implied in the agreements.

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

**BERNARDO AND BENYAPA FEIG:**

114.    Specifically BERNARDO AND BENYAPA FEIG were told by PONDER that production associated with their investment program was operating and were at strong levels so these PLAINTIFFS could expect a great return on investment. This was a knowingly false statement when made.

115.    BERNARDO AND BENYAPA FEIG were told the money they invested was fully secured and available upon demand. This was also a knowingly false statement when made.

116.    BERNARDO AND BENYAPA FEIG were told the funds that were investing in were being run by persons with a "track record" and were "high level" professionals. This was a k knowingly false statement when made.

117.    BERNARDO AND BENYAPA FEIG read in materials received from PONDER and up line from POWELL and TOTH that the organization running the investment was bound by loan covenants that provided a margin of safety that included 20% reserve and had loan to value of 200 percent of certain assets. Along these lines it was specifically confirmed by the agent listed in the chart that there was adequate assets held by the investment organization sufficient enough to protect investors including these PLAINTIFFS and to assure the investments were sound. (Exhibit 2) These were all knowingly false statements when made.

118.    BERNARDO AND BENYAPA FEIG were told by PONDER of oil and gas tax deductions and tax benefits these.  These representations were knowingly false when made

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

as PONDER and the organization knew such tax benefits did not apply to investments

from IRA's.

119.    These PLAINTIFFS were told this investment was with a reputable organization

that had broker- dealer backing implying that they were legal and registered. They were

not.  These representations were knowingly false at the time they were made.

120.    It was implied from the information PLAINTIFFS received talking with their

agent and reading materials that the security purchased (the investments) were legal,

registered and viable when it was not.

**REPRESENTATIONS BELIEVED**

121.    Throughout the complaint various items of concealment are noted that apply to

all plaintiffs equally and which are adopted and incorporated by reference as though fully

set forth hereat. There are too many to recite again but it is believed that they were

purposeful omissions that should have and were not addressed by the agents listed in the

chart and by the controllers of the organization and their companies, namely Powel and

Toth, the Resolute Companies and the Homebound companies.  Some examples of this

kind of deceit by concealment include the failure to disclose prior fraudulent transfers (as

revealed in Bankruptcy - Exhibit 1), the failure to advise of the structural details of the

organization, interrelations and conflicts amongst the various defendants, the failure to

advise that plaintiff's investments (as set forth in Chart 1) were already subject to an S.E.C.

investigation, the failure of Toth, Powell and the agents identified in the chart to advise

Plaintiff that the entire investment organization and all its moving parts were in dire straits

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

and not able to pay bills as early as 2018.  Since Plaintiff was not told this, he was allowed to purchase the investment under false pretenses.  The pretense was this was a successful operating program that was on course to meet great investment goals and high returns for investors when it was not.  Also included in the list of concealment would be the failure to tell this Plaintiff, and all Plaintiffs of gaps in the management agreements that Toth and Powell did not set forth prices locking in the services that the various companies would perform.    The gap that should have been disclosed allowed Defendants inter-related companies to overcharge and in effect steal Plaintiff's investment monies and the assets that were bought with it.  Also not advised by all defendants listed in the chart was the fact that the money keeping the investment organization viable was new money contributed from new investors, not oil profits successfully produced by the organization.

122.    Each of the above listed knowingly false misrepresentations shall be individually and collectively referred to herein as the "Misrepresentations."

123.    CHAPMAN and TARYLE and PONDER told all PLAINTIFFS that RCP also owned Petro Rock Mineral Holdings, Ltd, and were in partnership with "operators" run by TOTH, to wit Mercury and Homebound.: "Resolute Related Parties" are collective entities of "…other affiliated entities, and the respective successors, assigns, officers, directors, stockholders, managers, members, principals, employees, representatives, agents, and attorneys of RCM and REC and other affiliated entities…" It was these entities, the names of which were withheld from PLAINTIFFS, that were represented to PLAINTIFFS to be the collective entities that would be responsible for the represented

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

loan and principal returns of these investments.

124.    PLAINTIFFS in this action were all retired or wanting the money from these investments as economic resources for their retirement.   Many are all over 65 and vulnerable to exploitation.   In the end, it was the investors/PLAINTIFFS putting trust in the mirage that this was a well-planned, reputable, and experienced company with a proven track record, when it was not.

125.    Most of the investments by PLAINTIFFS in this action, whether debt or equity, were made AFTER the SEC began investigating TOTH, POWELL, RCP, and PetroRock in 2017, at which time the investments were still being represented as safe and with Unconditional Guarantees.

126.    PLAINTIFFS all justifiably relied on Misrepresentations.

127.    PLAINTIFF investors were told they were secured by CHAPMAN and TARYLE and TOTH when they were not.   More importantly, they were told that a representative would pursue forfeiture of the security if it went into default. This was never done and was another knowingly false misrepresentation when made.

128.    PLAINTIFFS in the debt programs were promised collateral which would be equivalent to 200% of the loan value.   Again, this was a knowingly false statement when made by DEFENDANTS to PLAINTIFFS.

129.    The Strategic Energy ASSETS VII, (SEA VII) in which all PLAINTIFFS invested was represented as being able to produce 2210 barrels a day, when actual output was less than 199 barrels a day.    This statement was knowingly false when made. It

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

represented that lease operating expenses would be 15%. This statement was knowingly false when made. They also Misrepresented that all PLAINTIFFS would realize $91,000 profit over a five-year hold, with an average monthly cash flow of $1,911 commencing in year two based on a $100,000 investment.  This statement was knowingly false when made.

130.    PONDER and CHAPMAN and TARYLE sold the debt funds at the direction of TOTH and POWELL on the basis that investors would be able to ask questions. This statement was knowingly false when made.  PLAINTIFFS insisted on the ability to ask questions but were not afforded the opportunity.  PLAINTIFFS relied upon this Misrepresentation as evidence they were investing in an engaging and transparent organization.

131.    The funds offered by TOTH and POWELL and sold by CHAPMAN and TARYLE and PONDER were represented to be run by an organization with an established track record. This statement was knowingly false when made designed to project the investment as being something more than it and to make investors think the investment had sponsors that had more skills and acumen than they actually had.   These Misrepresentations were made with the knowing purpose of inducing PLAINTIFFS to buy when they would not otherwise have bought.  PLAINTIFF investors reasonably relied upon TOTH and POWELL and their organizations as having a track record. They were all told this by the salesmen, either CHAPMAN and TARYLE or PONDER.  It is alleged this was part of a deceit and a fraud perpetrated by TOTH and POWELL designed to represent

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

the organization as something it was not.

132.    Each fund the PLAINTIFFS investments had a provision allowing the investor to obtain their principal and interest upon written notice. This statement was knowingly false when made. Even though many of the PLAINTIFFS gave written notice of non-renewal, no return of the investment or payment of the loan was ever made. This whole concept that this was a short-term opportunity was attractive and something that induced and caused PLAINTIFF to rely upon in investing.   For one example, PLAINTIFF HOLLIFIELD wrote a letter to Resolute Capital Partners on February 6, 2021.  In the letter he stated, "This is a Nonrenewal Notice", "The maturity of this loan is 10/1/2021 and in accordance with the Business Promissory Note and Business Loan Agreement, lender Michael Alan HOLLIFIELD asks for prompt return of the initial loan amount of $100,000 no later than the 25th day after the maturity date set forth (i.e., no later than 10/26/2021)"

133.    PLAINTIFF HOLLIFIELD received no response to this notice, and received no money returned. This provision allowing the investor to obtain their principal and interest upon written notice turned out to be another knowingly false statement.  PLAINTIFFS were all told this by the salesmen, in face-to-face conversations by either CHAPMAN and TARYLE or PONDER within a month or so prior to making the investment.   These statements were knowingly false when made.   It is alleged this was part of a deceit and a fraud perpetrated by DEFENDANTS, and each of them, designed to represent the organization as granting something it does not provide.

134.    Privity between PLAINTIFF investors starts with the persons who made

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

personal contact with the PLAINTIFFS, CHAPMAN and TARYLE and PONDER. Most

communication was by way of oral personal communication, which all PLAINTIFFS had

either from CHAPMAN AND TARYLE or PONDER.  They also received emails from

CHAPMAN AND TARYLE or PONDER reiterating all the facts contained in this

Complaint.  However, the sale was made directly between PLAINTIFFS, and TOTH and

POWELL's organization because it was done on an internet portal controlled by TOTH

and POWELL, not CHAPMAN and TARYLE or PONDER.   The written

misrepresentations were in brochures created by TOTH and POWELL, not CHAPMAN

and TARYLE and PONDER. TOTH and POWELL used CHAPMAN and TARYLE and

PONDER as their agents as a finder, whom they paid from the proceeds of sales. These

agents were directly downline and under the authority and direction, of TOTH and

POWELL.

135.    Another area of fraud and deceit practiced on each and every PLAINTIFF was

the misrepresentation of the cashflow and protections the oil fields would provide.

PLAINTIFFS were given the knowingly false impression starting with TOTH and

POWELL that this was a viable investment suitable for retirement and that the cash flow

from the investments could be considered comparable to guaranteed. These statements

were knowingly false when made.

136.    Another part of the fraud is that CHAPMAN and TARYLE and PONDER, under

the direction of TOTH and POWELL, would tell PLAINTIFFS when signing the

investment contract not to worry about the fine print, that that was just boilerplate stuff in

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

every investment and to disregard it.  Along with this, PLAINTIFFS were not told that CHAPMAN and TARYLE and PONDER had allegiance with TOTH and POWELL in that the were being paid as finders by TOTH and POWELL.  This was a fact that should have been disclosed but never were.

137.    All of the above Misrepresentations collectively induced PLAINTIFFS to buy when they might have not bought had the truth been known to them.

138.    Also, going to privity, TOTH and POWELL are described as related persons in the brochures, offering and contractual documents.  Language such as the following is standard in all the investments: "PetroRock is affiliated with, among others, Homebound, Inc…, Homebound Resources, LLC…, Homebound Financial Group, LP…, Mercury Operating, LLC…, and (collectively 'Homebound' and together with other affiliated entities collectively are the PetroRock related parties)."

139.    All funds purchased by PLAINTIFFS are represented as managed by Resolute Capital Partners and its affiliated companies, members, managers, and employees. All of the brochures and communications indicated that Mercury Operating would act as the operator for PetroRock and be a conduit. It turns out that the Homebound companies paid payroll services for all PetroRock personnel and Mercury personnel from investor money, all under the direction and authority of TOTH and POWELL. All the Funds bought by PLAINTIFFS were bought and managed by Resolute Capital Partners and its affiliated companies, members, managers, and employees.

140.    Lastly on the matter of privity, most, if not all sales, in 2018 forward were done

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

through DocuSign documents between TOTH and POWELL's broker dealer organization. CHAPMAN and TARYLE or PONDER were facilitators for the TOTH and POWELL's Broker Dealer organization. The DocuSign documents were documents exchanged over an internet portal under the control of TOTH and POWELL and/or their downline companies above mentioned which created privity in a number of persons and entities.

141.      Exemplars of the various agreements are attached as Exhibits 2, 8, 10. These agreements are substantially identical to the ones executed in regard to each of the above investments except for the execution dates, lending parties, dates of investments, amounts of interest and due dates, which are specified in the above chart and or near ¶42.

**Unregistered Offerings**

142.      DEFENDANTS RCP, the CHAPMAN and TARYLE companies, TOTH and POWELL sold equity securities to investors in the form of membership interests in the pooled investment vehicles listed in Figure 1 ("Equity Funds"). (Exhibit 34.) The offering materials for these equity securities offered investors monetary distributions based on oil revenue and any subsequent sale of the wells. None of these offerings were registered with the Securities and Exchange Commission when they should have been. (hereinafter may be referred to as the "Commission" or "SEC.")

143.      DEFENDANTS RCP, the CHAPMAN and TARYLE companies, TOTH and POWELL also sold debt securities to investors in the form of promissory notes. The promissory notes were issued by the companies listed in Figure 2 below ("Debt Funds"). (Exhibit 34) These raised money and lent it to their parent company, PETROROCK. The

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

notes offered fixed returns ranging from 8% to 12% per year, depending on the term. None of these offerings were registered with the Commission.

144.    DEFENDANTS RCP, the CHAPMAN and TARYLE companies, TOTH and POWELL claimed exemptions from registration for all of these offerings pursuant to provisions of the Securities Act and Regulation D, but no exemption from registration was applicable. DEFENDANTS offered the securities through general solicitation, including seminars, dinners, and paid radio shows, which would disqualify them from Regulation D exemption.  Moreover, DEFENDANTS RCP, the CHAPMAN and TARYLE companies, TOTH and POWELL failed to take reasonable steps to verify the accredited status of investors when applicable under the claimed exemption and sold certain of the unregistered securities to hundreds of non-accredited investors.

145.    Salespeople acting on behalf of DEFENDANTS RCP, the CHAPMAN and TARYLE companies, TOTH AND POWELL directed investors with traditional retirement accounts that did not allow investments in unregistered oil and gas offerings to companies that assisted the investors in opening, and transferring their retirement funds to, self-directed individual retirement accounts.  Investors then used those accounts to purchase securities issued by the Defendant Equity and Debt Funds.  Had PLAINTIFF investors known that this was because their investments were too high risk, they would not have moved their IRA/401K accounts or invested in the DEFENDANTS' equity or loan funds.

146.    DEFENDANTS RCP, the CHAPMAN AND TARYLE companies, TOTH and

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

POWELL or their companies were not registered as a broker-dealer or associated with a registered broker-dealer, yet each participated in selling these unregistered securities. This included them selling the above mentioned Equity and Debt Funds at investor dinners and investor seminars and advising potential investors on the merits of participating. This included them in setting the contractual terms between the issuers and investors and oversaw them handling investors' funds. Each of them also directed RCP to pay transaction-based compensation in the form of commissions to salespeople who referred investors to the Equity and Debt Funds. Each of them arranged for overrides to be paid based on the performance of these salespeople or in the alternative, they were rewarded by a compensation structure which provided greater compensation for acquiring more investors or more money into the investments.

147.    Had the POWELL, TOTH, RCP, and the CHAPMAN and TARYLE companies been registered, or licensed, or had they used a registered or licensed sales force, the PLAINTIFF investors would have been afforded better investor protections, including the required third-party due diligence of registered investments.  None of this was done.  Had there been third-party due diligence, especially for the sales occurring after the 2017 SEC investigation commenced, the third-party due diligence would most likely have discovered and would have been obligated to disclose that the companies/principals were under SEC investigation, and thus the sales to these PLAINTIFFS would not have occurred because proper disclosures would have alerted PLAINTIFF investors to issues that would have exposed this investment to being too dangerous and risky for PLAINTIFFS as an

investment and/or retirement vehicle and saved PLAINTIFFS from their losses.  By being unregistered, and using an unregistered sales force, DEFENDANTS all violated securities laws which constitutes negligence per se. According to the SEC, TOTH and POWELL willfully violated Section 15(a) of the Exchange Act and by deduction 12(a)(1) of the Securities Act, which makes it unlawful to effect any transaction in the purchase or sale of any security for the account of others that is not registered. See Exhibit 31 and Exhibit 32 throughout for references to the unregistered security offering and TOTH and POWELL acting as unregistered broker-dealers.

**DEFENDANTS RCP, HOMEBOUND RESOURCES, TOTH and POWELL Made Material Misstatements and Omitted Material Facts in the Equity Offerings**

148.    The Defendant Equity Funds were pooled investment vehicles that sold LLC interests to investors.  Each of the Equity Funds then purchased a percentage working interest in a set of oil and gas wells identified and purchased by HOMEBOUND. DEFENDANTS RCP, HOMEBOUND RESOURCES, TOTH and POWELL offered the following Equity Funds during the Relevant Period:

Figure 1: Unregistered Equity Offerings During the Relevant Period

| Offering | Open Date | Monies Received |
|---|---|---|
| HBR VI | July 2016 | 3,295,000 |
| SEA III | December 2016 | 3,995,520 |

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

| | | |
|---|---|---|
| SEA IV | February 2017 | 4,000,000 |
| SEA V | September 2017 | 4,393,300 |
| SEA VI | December 2017 | 4,587,600 |
| SEA VII | May 2018 | 3,0589,300 |
| SEA VIII | October 2019 | 10,480,000 |
| Total | | $61,340,720 |

149.    TOTH and POWELL controlled the Equity Funds and had ultimate authority over the statements in the offering materials these Equity Funds provided to investors.  The offering materials were approved by POWELL on behalf of RCP, PETROROCK, MERCURY and TOTH on behalf of RCP, HOMEBOUND, PETROROCK and MERCURY and created a materially misleading impression of RCP, PETROROCK, MERCURY and HOMEBOUND's operations.

150.    In addition, TOTH, POWELL, and RCP provided Equity Funds with a "one-pager" document that typically featured the RCP and Homebound logos. (Referred to in SEC Ruling, See Exhibit "32.") The same figures were referred to in the SEA VII Confidential Investor Disclosure Document. The documents were approved by POWELL and TOTH on behalf of RCP. The brochures contained knowing false statements and purposely overestimated unsupported oil well production projections regarding the performance of the oil wells in which the Equity Funds owned working interests, particularly in light of prior experience. The short brochures for SEA IV, SEA V and SEA VI each projected the same production of barrels of oil per day even though each of the

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

Funds owned working interests in different wells in different regions. Moreover, at the time of these offerings, the wells owned by Homebound had a track record that fell well short of RCP's prior projections. DEFENDANTS, and each of them, knew this.

151.    For example, RCP had projected 510 barrels of oil per day and 762,625 total barrels over a 3 to 5-year period for SEA III. Instead, after nearly two years of production, the SEA III wells produced an average of 40 barrels of oil per day, with just 27,857 total barrels. The SEA IV through SEA VI brochures nevertheless included, and failed to meet, the exact same projections. The SEA VII materials included even larger insufficiently supported projections that DEFENDANTS could not meet:

| Offering | Projected Production | Actual Production |
| --- | --- | --- |
| SEA IV | 510 barrels per day | 5 barrels per day |
| SEA V | 510 barrels per day | 3 barrels per day |
| SEA VI | 510 barrels per day | 5 barrels per day |
| SEA VII | 2210 barrels per day | 199 barrels per day |

152.    Offerings materials for the Equity Funds also did not accurately disclose the amount or percentage of investor funds that would be used for marketing expenses, commissions to salespeople, expenses and salaries of Homebound and RCP employees and consultants, and payments to investors from prior offerings. Upon information and belief, TOTH and POWELL were taking excessive fees in the millions of dollars, money

45

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

that should have gone to the investors, or to oil operations, but instead money was being pocketed and pilfered through RCP and Homebound companies to POWELL and TOTH and their companies.

153.    In addition, Defendant CHAPMAN and TARYLE made statements about the potential tax benefits of these investments that were misleading to retirement account investors.    (Exhibit "40.")    Specifically, DEFENDANTS RCP, CHAPMAN and TARYLE, TOTH and POWELL provided investors with a document drafted by POWELL entitled "Tax Benefits of U.S. Oil & Gas Investments." All DEFENDANTS knew these were knowingly false Misrepresentations. The document described potential tax benefits associated with investments in oil and gas but did not disclose that the benefits were not available to retirement account investors.  As shown in Chart 1, eleven PLAINTIFFS' investments were through IRAs or 401k programs, and could not receive any such tax benefits, contrary to what they were led to believe.

154.    TOTH, POWELL, CHAPMAN AND TARYLE, and RCP failed to disclose they did not have enough money, resources, or capital on hand to develop the fields and that substantial fund had been diverted.  They did not disclose these facts because they did not want to give the PLAINTIFFS reasons not to invest.

**DEFENDANTS RCP, CHAPMAN AND TARYLE, TOTH and POWELL Made Material Misstatements and Omitted Material Facts in the Debt Offerings**

155.    The debt offerings sold by DEFENDANTS to PLAINTIFFS involved promissory notes issued by funds wholly owned by PETROROCK, a company which, in

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

turn, was owned by HOMEBOUND FINANCIAL, which was owned and managed by TOTH under the auspices of the RCP. Each of the Debt Funds lent the money it raised from investors to PETROROCK. DEFENDANTS (RCP, TOTH, POWELL, and CHAPMAN AND TARYLE) offered and sold securities issued by the following Debt Funds, sold to PLAINTIFFS, during the Relevant Period:

Figure 2: Unregistered Debt Offerings During the Relevant Period

| Offering | Open Date | Money Raised |
|---|---|---|
| HBR VI | May-16 | 3,200,000 |
| SEA III | Nov-16 | 3,750,000 |
| PRMH Lenders Fund | Apr-17 | 20,008,750 |
| PRMH Lenders Fund II | May-17 | 19,491,250 |
| PRMH Lenders Fund III | Nov-17 | 20,529,000 |
| PRMH Lenders Fund IV | Dec-17 | 21,643,000 |
| Choice Energy I | Jan-18 | 13,418,000 |
| Legacy Energy | Mar-18 | 39,702,000 |
| Legacy Energy II | May-18 | 7,454,517 |
| Choice Energy II | Jul-18 | 13,134,600 |
| Choice Energy III | Aug-18 | 37,673,764 |
| Total | | $200,004,881 |

156.    Offering materials utilized by CHAPMAN AND TARYLE and PONDER to sell the funds to PLAINTIFFS were approved by TOTH, POWELL, and RCP. They were utilized to sell for the debt and equity offerings. These materials contained statements and omissions concerning the use of investor funds that created a materially misleading

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

impression to PLAINTIFFS. The debt offering materials disclosed that the issuers would lend funds to PETROROCK (which owned the debt funds) and that PETROROCK would use the funds to acquire oil and gas leases, fund its business operations and investments, and, in certain offerings, make interest payments on other PETROROCK debt.  These disclosures were materially misleading because investors, including PLAINTIFFS, were not told that the majority of assets raised would be used to make payments to investors in other Debt Funds - which has the characteristics of a Ponzi scheme.

157.    The offering materials for the PRMH Lenders Fund I-IV debt offerings, stated that PETROROCK would allocate all funds it received in predetermined percentages to specific uses, including land, royalty/mineral rights, oil, and gas working interests, and 20% for "cash reserves."  Similar statements were made and used by DEFENDANTS to sell all debt offerings purchased by PLAINTIFFS.

158.    These statements were materially misleading and knowingly false when made to every PLAINTIFF because, in addition to failing to disclose that funds would be and were being used to repay prior investors, PETROROCK did not have the money it claimed. The PRMH Lender Funds I – IV should have been $15 million, and there should have been a proportionally similar amount in the other funds.  In fact, by the end of 2019, PETROROCK had less than $100,000 in cash, with only $12,600 earmarked for the four other PRMH Lenders Funds.  This renders the offering materials inaccurate and was not something which the DEFENDANTS informed any PLAINTIFF about. It is a further concealment foisted upon PLAINTIFFS by POWELL, TOTH, RCP, and CHAPMAN

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

AND TARYLE. This would not be allowed in a registered security offering, which this offering should have been.

159.    In early 2018, Legacy Energy raised approximately $39.7 million from investors, including some PLAINTIFFS, through the sale of promissory notes offering 8-9% annual interest, and loaned the money raised from investors to its owner, PETROROCK. In the offering materials prepared by TOTH and POWELL, prospective investors were told that the "primary purpose" of Legacy Energy was to "finance the business and investment operations of PetroRock in connection with its Oil and Gas Interests" and that the funds they provided may be used for, among other things. the 'repayment of other debt, loans and promissory notes" of PETROROCK affiliates.

160.    The offering materials for Legacy Energy (representative of all fund offering materials) prepared by TOTH, POWELL with the aid of RCP were materially misleading because, in addition to the above, the materials failed to disclose that some of the funds it received from investors and loaned to PETROROCK would be used to make distributions to equity investors in an undisclosed related-party transaction.  Nearly half of the money raised was used to close out the HBR VI and SEA III Funds, including making distributions to equity investors in those Funds.  DEFENDANTS made those payments through a series of related-party transactions that DEFENDANTS TOTH and POWELL did not disclose in the offering materials.

161.    The above transactions deprived PLAINTIFFS of what was promised in the Offering Materials because it should have gone to PETROROCK and its oil production

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

venture.  DEFENDANTS TOTH, POWELL, and RCP set the price for those transactions without an independent appraisal or any other market-based valuation.  This made it a rigged transaction because the price was set without an independent appraisal or any other market-based evaluation. If disclosed, it would have revealed manipulative self-dealing on the part of TOTH, POWELL, RCP, and the CHAPMAN AND TARYLE companies, which, if known by PLAINTIFFS before they purchased their interests, would not have been received well and would have been grounds for PLAINTIFFS rejecting this investment.

162.     TOTH, POWELL, CHAPMAN AND TARYLE, and RCP touted to PLAINTIFFS the success of the overall opportunity offered in their marketing efforts. TOTH, POWELL, and RCP had downline operations, helping them market these oil opportunities to PLAINTIFFS. These DEFENDANTS claimed their opportunities were enjoying an average 11% rate of return. These claims were materially misleading for the above reasons and because DEFENDANTS failed to disclose that these purported returns were based on related-party and not market-based transactions and came primarily from other investor funds as opposed to successful operations.

## FAILURE TO DISCLOSE:

163.     Nowhere in any of the Marketing Materials or investment disclosures supplied to PLAINTIFFS do they disclose that TOTH and his companies were involved in the aforementioned bankruptcy shortly before the subject investments were made including one only 20 days prior to PLAINTIFF HOLLIFIELD who invested $100,000 in the first

50

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

of four funds in which he invested (for a total of $990,000). In a properly requited offering, this would have to be disclosed.

164.    In the 2017 bankruptcy filing, Judge Hale found that TOTH, PETROROCK, and Mercury Operating, LLC, in association with the Homebound companies, engaged in fraudulent transfers that these transfers had to be "avoided" and recovered.  The 2017 bankruptcy findings were a material fact that is required to be disclosed to potential investors.

165.    If the bankruptcy and these transfers had been disclosed to the PLAINTIFFS herein, these cautious PLAINTIFF retail investors would not have invested their retirement money with DEFENDANTS and therefore avoided their losses.

166.    Nowhere do these DEFENDANTS disclose this 2017 bankruptcy proceeding.

167.    Also, not disclosed in sufficient detail is the interrelationship between the various companies that interact with PETROROCK and MERCURY and the intertwining of ownership, directors, and control of the individually named DEFENDANTS and the DEFENDANT companies.  The complicated structure of the intertwining entities and persons allows for conduits to hide transfers of monies and perpetuate frauds or deceits to cheat investors. This was not explained to the PLAINTIFF investors, but it should have been because it created the opportunity that allowed TOTH and POWELL to be unaccountable and able to misappropriate investor monies directly or indirectly.

168.    The sales force worked for and took orders starting around 2016 from POWELL and TOTH who worked through the offices located in Reno, Nevada, San Francisco,

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

California, and Minneapolis, Minnesota. They would occasionally use independent contractors as agents to sell the funds, such as CHAPMAN and TARYLE and his companies and Craig PONDER and his companies.

169.    PLAINTIFFS did not know of the terms or gaps in the agreements between PETROROCK, Homebound, Mercury, and other related companies, but would not have invested had they known that the interrelated relationships between the companies which allowed TOTH and POWELL to manipulate the investments in violation of their fiduciary duties owed to the Investors. If registered, this would have needed to be disclosed to allow the investors to make reasonable investment decisions.

170.    At all times, the sales and marketing of these securities was under the control, supervision, and final determination and direction of POWELL, TOTH, RCP and the CHAPMAN and TARYLE companies. They appeared at meetings, conferences, dinners, and lunches to set policy and guidelines for the RESOLUTE companies' sales force. During these meetings, which started in 2016 and continued until 2021, they communicated to the sales force what to say to investors.  They controlled the message, so they are an integral part of all of the allegations contained in this complaint. They set policies and procedures and communicated the terms of the deals to their agents to act as finders.

171.    CHAPMAN and TARYLE was the person who solicited the sale to all of the named PLAINTIFFS in this matter. He was an agent of POWELL and TOTH. CHAPMAN and TARYLE was directed by them and paid by them as a Finder. CHAPMAN and

TARYLE did not close the deals.  He first brought the deals to TOTH and POWELL.

POWELL and TOTH closed all investment deals with PLAINTIFFS without CHAPMAN

and TARYLE.  Nonetheless, CHAPMAN and TARYLE, as the agent of POWELL,

TOTH, and RCP, is still considered a seller under federal law.

172.    The sellers under federal law would include the actual funds including, without

limitation, LEGACY ENERGY, LLC; PRMH LENDERS FUND III, LLC; STRATEGIC

ENERGY ASSETS VII, LLC. (A complete list of all funds and the transfers for all the

securities in this case is found in Chart 1) These are the funds that transferred the title to

the buyers. Sellers also include POWELL, TOTH, RCP, and the CHAPMAN and

TARYLE companies who as non-transferors organized, controlled, and made the sales

possible. All of the investor agreements were signed by either TOTH or POWELL. TOTH

and POWELL signed all of the downline documents necessary to transfer the title and

approved all mandatory material and offerings. TOTH signed the Promissory Note for the

SEA VII equity program, Exhibit 5, page 4, and POWELL signed the Investment

Agreement for the for the SEA VII equity program (Exhibit 9) TOTH signed Choice

Energy Business Loan Agreement, a debt program.

173.    TOTH POWELL, and RCP and all of the downline salespersons and sales

organizations are considered sellers because they were motivated at least in part by a desire

to serve their own financial interests or those of the securities owner (the funds).

174.    POWELL, TOTH, and RCP, through CHAPMAN and TARYLE and PONDER

and other finders are the sellers to the PLAINTIFFS in this case.

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

175.    Offerings were submitted to the public between 2016-2021. The PLAINTIFFS herein invested between September 26, 2017, and March 31, 2020. DEFENDANTS produced Business Promissory Notes, Business Loan Agreements, Confidential Business Loan Disclosure Documents, Introductory letters, Promissory Notes, Loan Agreements, Loan Summary, Unconditional Guarantee, Confidential Business Loan Disclosure Document, Confidential Private Placement Memoranda, Limited Liability Company Agreement, and similar documents were made on the date each loan/equity investment was made. (Chart 1). In person contacts between the PLAINTIFFS and DEFENDANTS, through TOTH, POWELL, CHAPMAN AND TARYLE, RCP, and PONDER occurred shortly before each of the investments were made. The loans the PLAINTIFFS made in the debt funds matured and became due between 2019 and May 20, 2022.

176.    These investments were sold by DEFENDANTS using marketing materials, samples of which are attached hereto as Exhibits 11, 38, 39, 40, the contracts and associated documents and disclosures executed by the POWELL and TOTH, representative sampled of which are attached as Exhibits 5, 6, 9, 10, and face to face meetings, seminars, phone calls with CHAPMAN AND TARYLE and PONDER as agents of TOTH and POWELL.

177.    PLAINTIFFS specifically allege that POWELL, TOTH, and RCP were acting as registered or licensed brokers and that they used their entities and other Defendant owned entities as vehicles to sell unregistered securities against the law. This violation entitles PLAINTIFFS to rescission and disgorgement in favor of all PLAINTIFFS. The

54

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

SEC found TOTH and POWELL violated the laws by acting as unregistered brokers subjecting them to a cease-and-desist order, which TOTH and POWELL accepted. In fact, these DEFENDANTS were selling unregistered securities without an exemption to do so and they were sending out marketing material creating the false impression that their investments were being offered by FINRA/SIPC members. This was not true. Had it been true, PLAINTIFFS would have safeguards or investor protections provided to them.  It was an omission of material fact that Resolute, POWELL, TOTH, RCP, and the CHAPMAN and TARYLE companies did not disclose that they were not registered. This is another intentional deceit.

178.    Resolute utilized promoters such as Mir jafer ali Joffrey to endorse their securities, podcasts, phone calls, emails, and other public means. Mir jafer ali Joffrey is not licensed. The use of him rendered TOTH, POWELL and RCP's sales program illegal and precludes them from claiming they are Reg. D exempt.

179.    The SEC issued a cease and desist order, implicating DEFENDANTS POWELL, TOTH, RCP, and CHAPMAN and TARYLE companies in a substantial fraudulent marketing campaign aimed at advising investors, including all the PLAINTIFFS involved in this case.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

180.    This is a class action on behalf of persons or entities who purchased or otherwise acquired investments (also called securities) from the umbrella organization run by the DEFENDANTS (the "class."). PLAINTIFFS seek to recover comprehensible damages

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

caused by DEFENDANTS' violation of all causes of action especially the violations of Civil Code 1770 et seq.

181.    PLAINTIFFS bring this action as a class action. The class is on behalf of persons, trusts, or entities residing or doing business in or from California that purchased or otherwise acquired investments (also called securities) from the umbrella organization run by the DEFENDANTS. (the "class."). Excluded from the Class are any investors that are the DEFENDANTS herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which DEFENDANTS have or had a controlling interest.

182.    The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown to PLAINTIFFS at this time. They can be ascertained only through appropriate discovery. PLAINTIFFS believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

183.    PLAINTIFFS' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by DEFENDANTS' wrongful conduct in violation of laws and causes of action set forth herein.

184.    The Representative PLAINTIFFS will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

and securities litigation. PLAINTIFFS have no interests antagonistic to or in conflict with those of the Class.

185.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

1.    Whether DEFENDANTS' acts as alleged against the law;

2.    Whether DEFENDANTS' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

3.    Whether DEFENDANTS' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

4.    Whether the Individual DEFENDANTS caused the Company to issue false and misleading statements during the Class Period;

5.    Whether DEFENDANTS acted knowingly or recklessly in issuing false and misleading statements during the Class Period;

6.    Where the money went and what assets are viable;

7.    Whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

8.    Whether injunctive relief is necessary for the benefit of all.

186.    A class action is superior to all other available methods for the fair and efficient

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. A class action is more efficient in bringing a suit rather than individual lawsuits.

**FIRST CAUSE OF ACTION:**

**SECURITIES FRAUD (VIOLATION OF CORPORATE SECTION 25401) AGAINST THOMAS CHAPMAN and WARREN TARYLE;  VELOCITY NORTH INVESTMENTS, INC.; WEALTH STRATEGIES;  and DOES 1-300)**

187.     PLAINTIFFS incorporate by reference all paragraphs in this complaint as though fully set forth herein.

188.     DEFENDANTS THOMAS CHAPMAN and TARYLE, , VELOCITY NORTH INVESTMENTS, INC. and CHAPMAN AND TARYLE WEALTH STRATEGIES are sellers of securities in that they are the actual sellers in privity with PLAINTIFFS of the equity or debt funds purchased by PLAINTIFFS.  These DEFENDANTS also derived profits by the sales, or had expectation of such profits, upon sale of said securities.

189.     PLAINTIFFS allege these DEFENDANTS had direct contact with PLAINTIFFS or direct control over the persons who had direct contact with PLAINTIFFS, during the sale of the above-described investments.  As discussed above, the investment documents and communications made during the sale were made in violation of California

Corporation Code §25401 which prohibits offers or sales of securities including investment opportunities by means of a written or oral communication that contain: "Untrue statement[s] of a material fact or omits to state a material fact necessary in order to make the statement[s] made, in light of the circumstances under which they were made, not misleading." These misstatements and falsities are set forth in detail and by each PLAINTIFF in the general allegations portion of this complaint.

190.    THOMAS CHAPMAN AND TARYLE, WARREN TARYLE, VELOCITY NORTH INVESTMENTS, INC., and CHAPMAN WEALTH STRATEGIES, herein referred to as the CHAPMAN DEFENDANTS, or CHAPMAN companies or just CHAPMAN throughout this complaint, were sellers by the fact that CHAPMAN and TARYLE had direct privity with the PLAINTIFFS, and qualifies as a seller because he successfully solicited the purchases of the subject securities to PLAINTIFFS, which he did being motivated by his own financial interest or the interest of the security owner.

191.    CHAPMAN and TARYLE or his companies were paid to find the prospective buyers and turned those buyers over to RCP, TOTH and POWELL to close the sale. The arrangement of the sale was under the authority of RCP, POWELL, KUIPER and TOTH.

192.    PLAINTIFFS are unsophisticated lenders and reasonably relied on the information given to them in informational brochures, phone conversations, at meetings, informational websites, and the vague and confusing loan agreements and supporting documents as truthful.

193.    Many PLAINTIFFS are older.  All were harmed by the above-mentioned activity

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

through loss of their retirement monies, and fear and concern for their future safety.

194.    By reason of the above, PLAINTIFFS are entitled to rescission and damages, and/or the damages set forth in California *Civil Code* § 25501.

195.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code §§ 3294 or 3345 or both.

196.    PLAINTIFFS seek all other damages allowed by law for the above-described wrongdoing including costs of suit, investigation, attorneys' fees, pain, suffering, and mental anguish.

## SECOND CAUSE OF ACTION:

## BREACH OF FIDUCIARY DUTY

## (AGAINST THOMAS CHAPMAN; VELOCITY NORTH INVESTMENTS, INC.; CHAPMAN WEALTH STRATEGIES; WARREN TARYLE)

197.    PLAINTIFFS incorporate by reference all paragraphs in this complaint as though fully set forth herein.

198.    The above-named persons or entities were acting as sellers or were acting to facilitate sales. Anyone acting as a securities dealer or aiding in the sale of securities has a fiduciary duty to the purchaser under California law. (See *Duffy v. Cavalier* 21889 (215) Cal. App. 3rd 1517) The sellers were described above and includes CHAPMAN (and his companies).

199.    CHAPMAN and his companies are fiduciaries to PLAINTIFFS because they are

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

the custodians of PLAINTIFFS' equity investments and debt investments in gas and oil

investments and acted as PLAINTIFF's financial advisor.

200.    The CHAPMAN companies owed duties of care including loyalty, good faith,

confidentiality, prudence, and disclosure to PLAINTIFFS. DEFENDANTS breached their

fiduciary duties owed to PLAINTIFFS as described in detail in the general allegations of

this complaint including engaging in the mismanagement of the underlying assets, self-

dealing, and not engaging in due diligence. DEFENDANTS breached their fiduciary duty

for failing to discover and make full disclosure concerning the SEC investigation and the

above mentioned bankruptcy, and make the true financial condition of the funds,

Petrorock, and its related entities transparent.

201.    These DEFENDANTS also failed to disclose true oil and gas production figures

and estimates, and failed to disclose that the offerings were not registered, and the

salespersons were also not registered with the SEC. and were failing to properly manage

the PLAINTIFFS' assets. They also failed to disclose the true nature of these investments

having Ponzi scheme characteristics.

202.    DEFENDANTS had actual knowledge and inside information that they used for

their advantage and against the interests of PLAINTIFF investors as investors and owners,

placing their own interests before those of the investor PLAINTIFFS.

203.    Even if one of the DEFENDANTS abovementioned can be found not to be a

fiduciary owing a fiduciary duty, they are liable by rendering substantial assistance,

encouragement, and aiding and abetting those fiduciaries that did take advantage of

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

PLAINTIFFS as aiders and abettors of those owing a fiduciary duty.

204.     PLAINTIFFS were harmed because they lost the money that they put into these investments plus they suffered other economic, general, and special damages hereby requested, including pain, suffering, and mental anguish.

205.     DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either *Civil Code* §§ 3294 and 3345.

206.     PLAINTIFFS seek all other damages allowed by law for the above-mentioned wrongdoing including costs of suit, investigation, and attorneys' fees.

### THIRD CAUSE OF ACTION:

### FRAUD/FALSE PROMISE

### (AGAINST THOMAS CHAPMAN and WARREN TARYLE; VELOCITY NORTH INVESTMENTS, INC.; CHAPMAN WEALTH STRATEGIES)

207.     PLAINTIFFS incorporate by reference all paragraphs in this complaint as though fully set forth herein.

208.     The conduct of DEFENDANTS described in the title to this cause of action was fraudulent because there were omissions of material facts and there was misrepresentation of material facts. What information that was provided was neither truthful nor complete, thus DEFENDANTS sold or contributed to the sale of PLAINTIFFS' investment products that were misleading. Full disclosure of all material facts was not attempted, making this situation all the more fraudulent.

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

209.    DEFENDANTS also made a contract that is comparable to a false promise.

210.    DEFENDANTS did not intend that the product they were selling would meet PLAINTIFFS' needs because DEFENDANTS knew, or were reckless in not knowing, that they could not and would not be able to perform as promised or as portrayed as above described in the general allegations of this complaint, yet DEFENDANTS sold these investment products anyway knowing this. These false promises include concealments about the actual oil revenue and production projections and the above mentioned bankruptcy, gaps in structure as previously alleged, and conflict of interest that enabled fraudulent transfers by insiders. If PLAINTIFFS knew these facts earlier, they would not have invested or would have taken immediate action to protect themselves.

211.    PLAINTIFFS have set forth numerous acts of fraud and misrepresentations that need not be repeated but are incorporated by reference from the general allegations of this complaint as though fully set forth hereat.

212.    Further, DEFENDANTS made false statements that there were sufficient cash reserves for a margin of safety, which was untrue. In the lender programs and promissory notes, there was a statement that PLAINTIFFS can get their money back if PLAINTIFFS request so in writing. Even though PLAINTIFFS made this request in writing, their money was not returned as promised. Since DEFENDANTS knew of these falsities, this is categorized as deceit and fraud.

213.    DEFENDANTS intended that PLAINTIFFS rely on the above. DEFENDANTS knew the above statements were false and did not correct or inform the PLAINTIFFS that

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

PLAINTIFFS could not get their money back.

214.    PLAINTIFFS reasonably and justifiably relied on DEFENDANTS' promises and representations.

215.    DEFENDANTS did not perform as represented or promised. DEFENDANTS gave PLAINTIFFS a sub-standard product and sub-standard service. In fact, DEFENDANTS sold to PLAINTIFFS what DEFENDANTS knew was inappropriate, unsuitable, onerous, and deceptive, contrary to DEFENDANTS' representation as cited in the General Allegation Section of this Complaint.

216.    PLAINTIFFS were harmed for all the reasons and in all the ways stated above in other causes of action.

217.    PLAINTIFFS' reliance on DEFENDANTS' promise was a substantial factor in causing the present harm. PLAINTIFFS' reliance was reasonable.

218.    PLAINTIFFS were harmed from their loss of investment including suffering, pain, and mental anguish as a result of the above. PLAINTIFFS seek all general and special damages allowed by law.

219.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice and justifies punitive damages under either *Civil Code* §§ 3294 or 3345 and or both.

/ / / /

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

**FOURTH CAUSE OF ACTION:**

**FINANCIAL ELDER ABUSE (*Welfare and Institution Code* §15600 et sec.)**

**(for RICHARD SHAON, and LINDA V. HILDEBRAND only)**

**(AGAINST THOMAS CHAPMAN; WARREN TARYLE; VELOCITY NORTH INVESTMENTS, INC.; CHAPMAN WEALTH STRATEGIES)**

220.    PLAINTIFFS incorporate by reference all paragraphs in this complaint as though fully set forth herein.

221.    All PLAINTIFFS listed above were over the age of 65 at the time of the sale and therefore considered an "elder." As an "elder," within the meaning of *Welfare and Institution Code* § 15610.27, PLAINTIFFS RICHARD SHAON and LINDA V. HILDEBRAND were entitled to the heightened rights and special statutory protections provided by California's *Elder and Dependent Adult Civil Protection Act* (EADACPA), set forth in *Welfare and Institution Code* §15600 et sec.

222.    Under *Welfare and Institution Code* § 15610.30, a person is liable for financial elder abuse or for assisting financial elder abuse if they obtained the elder's property or money, and if they knew or should have known the conduct is likely to be harmful to the elder (listed in the title of this cause of action). DEFENDANTS did more than one sale with RICHARD SHAON; each time there was an additional sale, the elder person is entitled to extra protection. PLAINTIFFS as elders needed to improve their health and their surroundings, not make investments that could not likely materialize in their lifetime.

223.    The activity of DEFENDANTS was a predatory practice in that it constitutes

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

taking advantage of vulnerable elderly persons for DEFENDANTS' financial gain. When DEFENDANTS sold PLAINTIFFS these investments in 2018, right after the 2017 bankruptcy, and during the SEC ongoing investigation, DEFENDANTS knew or should have known that these elderly PLAINTIFFS would lose their money. DEFENDANTS knew or should have known that investing in their funds and operations was too hazardous because the operation had cash flow issues, none of which were disclosed outlined in the general allegations of this complaint.

224.    Broker-dealers with fiduciary duties like DEFENDANTS play a critical role in preventing financial abuse of elderly persons. Reputable persons should have rules and regulations to prevent sales of risky investments to elders in situations like this. It is believed that DEFENDANTS were grossly negligent or acted egregiously or intentionally in not having such rules and regulations or not monitoring the sales to elders.

225.    DEFENDANTS knew each sale was not suitable for elderly PLAINTIFFS based on PLAINTIFFS' expectations because DEFENDANTS knew neither DEFENDANTS, nor the investment, could deliver as promised, yet DEFENDANTS persisted to continue to sell products to PLAINTIFFS.

226.    Despite being an entity or person in possession of key facts, DEFENDANTS knowingly assisted and turned a blind eye and callous heart to the outrageous pilfering of the elderly PLAINTIFFS' money.

227.    By reason of the above, the CHAPMAN and TARYLE companies committed the above by knowingly assisting financial elder abuse.

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

228.    DEFENDANTS' financial abuse has caused PLAINTIFFS to undergo financial losses as well as emotional stress and frustration because of the loss of so much money, depriving PLAINTIFFS of financial security. DEFENDANTS knew or should have known that their conduct was likely harmful to PLAINTIFFS or otherwise in violation of the Laws particularly California *WIC* §15600.30.

229.    PLAINTIFFS were harmed including suffering from their loss of investment and suffering pain and mental anguish as a result of the above.

230.    By reason of the above-mentioned conduct, PLAINTIFFS are entitled to treble damages and attorneys' fees and costs at the discretion of Court, which PLAINTIFFS request.  (*Civil Code* § 3345)

231.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice and justifies punitive damages under either *Civil Code* 3294 or 3345 or both.

232.    PLAINTIFFS seek all damages available by law.

**FIFTH CAUSE OF ACTION:**
**VIOLATION    SECTION    12(a)(1)]OF    THE    SECURITIES    ACT**
**(UNREGISTERED SECURITY))**
**(AGAINST RESOLUTE CAPITAL PARTNERS LTD., THOMAS JOSEPH**
**POWELL, STEFAN TOTH; WARREN TARYLE; THOMAS CHAPMAN**
**AND TARYLE; VELOCITY NORTH INVESTMENTS, INC.; CHAPMAN**
**AND TARYLE WEALTH STRATEGIES**

233.    PLAINTIFFS incorporate by reference all paragraphs in this complaint as though fully set forth herein.

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

234.      By reason of above-mentioned conduct, DEFENDANTS POWELL, TOTH, CHAPMAN and TARYLE, and RCP willfully violated Section 5 of the Securities Act (15 *U.S. Code* § 77(e) and *15 U.S. Code* § 17), which states that "[unless] a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly, (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such securities or a medium of any perspective, or (2) to carry or cause to be carried through the mails for an interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for the delivery after sale." DEFENDANTS are not entitled to the exemption claimed because they have not acted in good faith and complied with the necessary requirements to obtain such exemption like not engaging in general solicitation or selling to unaccredited investors.

235.      As a result of the conduct described above, DEFENDANTS POWELL, TOTH, CHAPMAN and TARYLE, RCP, VELOCITY NORTH INVESTMENTS, INC., And CHAPMAN AND TARYLE WEALTH STRATEGIES willfully violated Section 5 of the Exchange Act, which states that "[it] shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any perspective or otherwise any security, unless a registration statement has been filed as to such security." No such registration statement was filed.

236.      The sales to PLAINTIFFS were made directly between PLAINTIFFS and

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

TOTH, RCP, and CHAPMAN AND TARYLE.

237.    TOTH, POWELL, RCP, and CHAPMAN and TARYLE created and issued brochures to PLAINTIFFS, which they relied upon to decide to purchase their security. These brochures contained known misrepresentations pertaining to these DEFENDANTS.

238.    POWELL, TOTH, Homebound Companies, and RCP controlled the funds in which PLAINTIFFS invested in and the selling agents, including CHAPMAN and TARYLE and PONDER.

239.    POWELL or TOTH signed the investment contracts that facilitated PLAINTIFF's investments.

240.    TOTH, POWELL, RCP, and CHAPMAN and TARYLE passed the title to the securities, and/or engaged in solicitation by soliciting the purchases of the securities, motivated in part by a desire to serve their own financial interest or those of the security owner.

241.    By reason of the above, and Section 12(a)(1),2 PLAINTIFFS are entitled to bring a civil action to rescind, plus interest and damages, against the issuers.  It is alleged that POWELL, TOTH, RCP, and CHAPMAN and TARYLE marketed the investments sold to PLAINTIFFS are liable as they are the issuers or controllers and persons who closed all sales of the securities, whether equity or loans) of the issuer under Section 20 of the *1934 Securities Act* (15 *USC* §78 t(a)). These DEFENDANTS promoted these securities to these PLAINTIFFS in mass communication as above set forth.

242.    The remedy is rescission or disgorgement of all monies paid plus interest and

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

damages.

243.    PLAINTIFFS seek all remedies allowed by law by reason of DEFENDANTS acting as unregistered broker dealers and selling unregistered securities.

244.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitute oppression, fraud, and malice and justifies punitive damages under either *Civil Code* 3294 or 3345 or both.

245.    PLAINTIFFS seek all damages available by law.

**SIXTH CAUSE OF ACTION:**

**BREACH OF CONTRACT/RESCISSION**

**(AGAINST LEGACY ENERGY, LLC; PRMH LENDERS FUND, including PRMH LENDERS FUNDS II, III, and IV, LLC; CHOICE ENERGY HOLDINGS, LLC, INCLUDING CHOICE ENERGY HOLDINGS, I & III, LLC, STRATEGIC ENERGY ASSETS, VII, LLC and PETROROCK MINERAL HOLDINGS, LLC AS GUARANTOR and WARREN TARYLE)**

246.    PLAINTIFFS incorporate by reference all paragraphs in this complaint as though fully set forth herein.

247.    As noted in Chart 1, above, whereby the details including dates and interest were alleged in the General Allegations of this Complaint, the following PLAINTIFFS entered into a contract where these PLAINTIFFS loaned LEGACY ENERGY, LLC the following pursuant to a Business Loan Agreement and Promissory Note guaranteed by PETROROCK Mineral Holdings, LLC. The agreement was that LEGACY would return

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

the money with the agreed upon interest. The deadline to make this payment has passed. This payment was guaranteed by PETROROCK who promised to cover any payment obligation of LEGACY.  Proper demand has been made. Therefore, both entities in this paragraph have breached their contract with PLAINTIFF and are obligated to pay the following amounts plus interest at this time.

      Michael HOLLIFIELD - $490,000, IRA investment made July 2, 2018 - 9.5% interest

      Javen POYYAK - $50,000, investment made May 23, 2018 - 8.5%

      Michael Anderson - $256,000, IRA investment made July 18, 2018 - 9.5%

248.     As noted above, whereby the details including dates and interest were alleged in the General Allegations of this Complaint, the following PLAINTIFFS entered into a contract where these PLAINTIFFS loaned PRHM Lenders Fund II, III, and IV LLC (PRHM) the following pursuant to a Business Loan Agreement and Promissory Note guaranteed by PETROROCK Mineral Holdings, LLC. The agreement was that PRHM would return the money with the agreed upon interest. The deadline to make this payment has passed.  This payment was guaranteed by PETROROCK who promised to cover any payment obligation of PRHM. Proper demand has been made. Therefore, both entities in this paragraph have breached their contract with PLAINTIFF and are obligated to pay the following amounts plus interest at this time.

      Michael HOLLIFIELD - $100,000, investment made September 26,2017 - 7.5% interest - PRMH Lenders Fund II

71

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

Richard Shaon - $274,000, IRA investment made June 1, 2018 - 9% interest - PRMH Lenders Fund II

Yvette Shaon - $156,000, IRA investment made Aug 17, 2017, and amended June 1, 2018 - 9% interest - PRMH Lenders Fund II.

Linda V. Hildebrand - $50,000 investment made April 28, 2017 - 7.5% interest - PRMH Lenders Fund, LLC, which became Choice Energy Holdings – I, LLC

Larry Carlson - $114,000, IRA investment made June 27, 2017 - 9% - PRMH Lenders Fund, LLC

Catherine Carlson - $65,000, IRA investment made November 28, 2017 - 9% - PRMH Lenders Fund III.

Thomas and Marilyn Carlson - $80,000 investment made February 13, 2018 - 8.5% interest.  PRMH Lenders Fund IV.

249.    Three PLAINTIFFS invested in Strategic Energy Assets, VII (SEA VII) based upon promised production and it being a viable company. Defendant was unable to meet either of these requirements so there is a failure of consideration. These PLAINTIFFS are entitled to this money back (plus interest) from SEA VII.

Michael HOLLIFIELD, $100,000 on November 28, 2018,

Richard Shaon, $50,000, IRA investment made September 20, 2019

Yvette Shaon, $50,000, IRA investment made September 3, 2019

Benyapa and Bernardo Feig, $75,000, December 6, 2018

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

250.    PLAINTIFF John Millhollon-Turner invested $100,000 on June 8, 2020, in his IRA account in Advantage Capital Holdings IV Fund, LLC, under the auspices of Resolute Capital Partners, based upon him being able to obtain his money back and that there was a viable property underlying the investment. Neither of these things were true and therefore, this constitutes a failure of consideration entitling PLAINTIFF Millhollon-Turner to his money back plus interest.

251.    As noted above, whereby the details including dates and interest were alleged in the General Allegations of this Complaint, the following PLAINTIFFS entered into a contract where these PLAINTIFFS loaned CHOICE ENERGY HOLDINGS, LLC; CHOICE ENERGY HOLDINGS -I, LLC; CHOICE ENERGY HOLDINGS -III, LLC; the following pursuant to a Business Loan Agreement and Promissory Note guaranteed by PETROROCK Mineral Holdings, LLC. The agreement was that CHOICE would return the money with the agreed upon interest. The deadline to make this payment has passed. This payment was guaranteed by PETROROCK who promised to cover any payment obligation of CHOICE. Proper demand has been made. Therefore, both entities in this paragraph have breached their contract with PLAINTIFFS and are obligated to pay the following amounts plus interest at this time.

Michael HOLLIFIELD, $200,000, on January 31, 2019, CHOICE III

Javen POYYAK, $100,000, on May 20, 2019, CHOICE III

Connie POYYAK, $63,000, IRA investment on April 4, 2019, CHOICE III

Linda V. Hildebrand, $50,000, IRA investment on April 10, 2018, CHOICE

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

ENERGY HOLDINGS -I, LLC, this was previously PRMH and became Choice.

252.    In alternative to the above, PLAINTIFF elects to void the contract and seek their money back or seek declaratory relief from the Court, declaring that DEFENDANTS, each above mentioned, presented an illusory, fraudulent, deceptive contract entered into by mistake or trickery justifying returning PLAINTIFFS money back.

253.    In the alternative, DEFENDANTS have breached each of the abovementioned contracts by not giving PLAINTIFFS the security and interest promised. Under these circumstances, this constitutes a failure of consideration permitting PLAINTIFFS to get their money back plus interest. As such, PLAINTIFFS requests the return of its principal as required in the contract.

254.    PLAINTIFFS fully performed but DEFENDANTS have not. PLAINTIFFS seek return of all monies paid, plus interest and attorney's fees and/or damages allowed by law. The contracts provided for attorney fees.

**SEVENTH CAUSE OF ACTION:**

**CIVIL CODE §3372 VIOLATION**

**AGAINST THOMAS CHAPMAN  and WARREN TARYLE; VELOCITY NORTH INVESTMENTS, INC.; CHAPMAN AND TARYLE WEALTH STRATEGIES**

255.    PLAINTIFFS incorporate by reference all paragraphs in this complaint as though fully set forth herein.

256.    DEFENDANTS above noted in the title of this cause of action, held themselves

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

out as investment advisors, financial advisors, and related terms. DEFENDANTS held themselves out as persons engaged in the business of advising others for compensation and as experts with respect to investments, generally, and particularly in the oil and gas investments. DEFENDANTS did not serve the best interests of the client but served his own interest in obtaining a finders fees, and therefore allowed PLAINTIFFS to purchase unsuitable products. In particular, DEFENDANTS represented themselves to be a qualified financial advisor in oil and gas investments when they were not. DEFENDANTS implied they were acting in the capacity of what is listed in *Civil Code* §3372 such as financial adviser, financial counselor, or investment adviser. These DEFENDANTS breached their duties in this regard and are liable to PLAINTIFFS under that law as a result and by reasons of *Civil Code* §3372.

257.    DEFENDANTS obtained compensation as a result of the financial advice rendered to PLAINTIFFS, but DEFENDANTS failed to render the financial advice with due care and skill reasonably expected of a person who is an expert as defined by and required by *Civil Code* §3372. DEFENDANTS were not properly licensed and/or registered to act as an expert, as defined in *Civil Code* §3372, or as DEFENDANTS represented or implied. This is further against the law for which DEFENDANTS are liable. DEFENDANTS are further liable for knowingly selling unregistered securities, which they were.

258.    PLAINTIFFS relied on DEFENDANTS' delivering services and advice of a level reasonable expected and set forth in *Civil Code* §3372. PLAINTIFFS were damaged

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

by reason of their reliance on DEFENDANTS' services.

259.    DEFENDANTS' services were not rendered with due care as reasonably expected and resulted in PLAINTIFFS not receiving what was portrayed. DEFENDANTS' services were instead rendered with fraud, deceit, dishonesty, ignorance, and/or lack of due diligence. PLAINTIFFS expected DEFENDANTS to render sound financial advice. DEFENDANTS did not.

260.    PLAINTIFFS were to be the recipients of DEFENDANTS' advisory services as defined above and as set forth in detail in the general allegations of this complaint. DEFENDANTS are liable to PLAINTIFFS for the damages caused in the purchase of this investment of $20,000,000; or in an amount to be determined according to proof at trial.

261.    PLAINTIFFS also request all damages or remedies afforded by law including disgorgement of fees covered by this statute and/or anything allowed by law including attorney's fees and costs of suit, reimbursement of principle with interest, pain, suffering, and mental anguish.

262.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice for which punitive damages are appropriate and requested under either *Civil Code* 3294 or 3345 or both.

**EIGHTH CAUSE OF ACTION:**
**CONSTRUCTIVE FRAUD**
**(AGAINST THOMAS CHAPMAN TARYLE and WARREN TARYLE; VELOCITY NORTH INVESTMENTS, INC.; CHAPMAN AND TARYLE WEALTH STRATEGIES; JAQUELINE KUIPER)**

263.    PLAINTIFFS incorporate by reference all paragraphs in this complaint as though

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

fully set forth herein. This cause of action relates to the named parties listed in the title of this cause of action.

264.    As described above, DEFENDANTS were fiduciaries to PLAINTIFFS and as such had a fiduciary duty to be acting for the benefit and in the best interest of PLAINTIFFS, including duties of disclosure and honesty. In addition or in the alternative, the above-named DEFENDANTS were sellers or aided and abetted or co-conspired with the above-named DEFENDANTS in the sale of these security investments to PLAINTIFFS.

265.    The DEFENDANTS were also the promoters and salespersons, or supervisors of same, who were marketing, selling, and operating this investment(s) and/or were aiders and abettors or co- conspirators. The rationale for each person's inducement has already been covered in other securities and fraud causes of action and in the general allegation section of this complaint incorporated by reference as set forth here.

266.    There was concealment of material facts and omission of material facts not disclosed, thus DEFENDANTS sold PLAINTIFFS products that were misleading or contained concealment of material facts. The details have been alleged in the general allegations section of this complaint and were already enumerated. These facts constitute constructive fraud in violation of *Civil Code* § 1573.

267.    There were many concealments including without limitation not disclosing the structure that defined the relationship of the parties operating PLAINTIFFS' investments, the failure to disclose PETROROCK's inability to meet projections of oil production as

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

set forth in the disclosure documents given to PLAINTIFFS prior to investing, and the failure to disclose key parties involved in the voidable, fraudulent transfers prior to the 2017 bankruptcy,  including PETROROCK, Mercury, and the Homebound companies. DEFENDANTS also failed to disclose that the SEC began an investigation in 2017 and took the company servers. When or if the company structure had been described, it required describing so many moving parts and companies that were not described all-in violation of Civil Code 1770 et seq. It is alleged this was done on purpose.

268.     DEFENDANTS also knew or were reckless in not knowing, and thus not telling PLAINTIFFS, that the investments were not a suitable investment for these PLAINTIFFS as they were not, and they should not have been sold as they were unregistered securities sold by unregistered or licensed brokers or broker-dealers. It has already been alleged that PLAINTIFF investors were deceived about all this and relied on DEFENDANTS to be licensed and registered and selling registered stock through proper channels.

269.     Also, DEFENDANTS did not tell PLAINTIFFS how much of the PLAINTIFFS' invested money was going or coming from other investment programs or that DEFENDANTS were engaged in Ponzi scheme tactics.

270.     Further, there were statements made by DEFENDANTS that there were sufficient cash reserves for a margin of safety, was untrue and should have been discussed and disclosed to PLAINTIFFS. PLAINTIFFS were referred to as secured lenders in the debt program and "guarantees" were offered, which should have been honored. All of these were material misrepresentations. No PLAINTIFF was secured as promised nor did

78

any of the guarantees amount to anything. PLAINTIFFS reasonably relied on these guarantees and promised facts as represented. They also relied on the represented margin of safety. This was all false. Since DEFENDANTS knew of these falsities, this was deceit and actionable constructive fraud.

271.     PLAINTIFFS were harmed for all the reasons and in all the ways stated above in other causes of action. This is a cause of action for constructive fraud so proof of actual intent to deceive is not required.

272.     PLAINTIFFS' reliance on DEFENDANTS' promise was a substantial factor in causing the present harm including the loss of their investment. Their reliance was reasonable.

273.     PLAINTIFFS were harmed including from not only the loss of their investment but the suffering, pain, and mental anguish that followed the loss. PLAINTIFFS seek all general and special damages allowed by law.

274.     DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice and justifies punitive damages under either *Civil Code* 3294 or 3345.

275.     PLAINTIFFS seek all damages available by law.

### NINTH CAUSE OF ACTION:
### NEGLIGENCE
### (Against THOMAS CHAPMAN AND TARYLE AND HIS COMPANIES)

276.     PLAINTIFFS incorporate by reference all paragraphs in this complaint as though fully set forth herein.

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

277.     CHAPMAN and TARYLE, acting individually and through his companies, negligently interacted with PLAINTIFFS. He led them to believe that he was acting as their financial advisor when he was actually a finder or conflicted in the financial scheme developed by TOTH, POWELL, and RCP.

278.     CHAPMAN AND TARYLE was either dishonest about his true role and/or engaged in dual representation, which is tantamount to serving two masters, creating a conflict of interest that cannot be waived and is negligent especially when not fully disclosed. Even if it could be waived, a waiver was not requested. All of this is negligence, but it is compounded by the fact that this investment needed to be vetted, evaluated, analyzed, all of which CHAPMAN and TARYLE did not do at the standard of care required. CHAPMAN and TARYLE was negligent in performing due diligence as well. CHAPMAN and TARYLE should have better vetted this product before introducing it to PLAINTIFFS, or if he did attempt to vet the product, he failed to do it appropriately and adequately within the standard of care. Standard of care due diligence would have uncovered that these investments were too risky for PLAINTIFFS especially with a recent bankruptcy proceeding showing fraudulent transfers had occurred by the parties to this investment in the past that the investments were short of cash and surviving on new investor infusion of money. Had CHAPMAN and TARYLE or his companies done their job, these PLAINTIFFS investments losses would not have occurred, or he could have blown the whistle and mitigated the loses for PLAINTIFFS. The facts if analyzed and investigated properly required a recommendation of no purchase. Anything less was a

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

violation of the standard of care.

279.     For the totality of reasons cited throughout this complaint, CHAPMAN and TARYLE's services were negligent, either through his negligent investigation of the investment or this outright failure to investigate. As late as 2021, he was still advising PLAINTIFFS not to worry.  On May 21, 2021, CHAPMAN and TARYLE wrote an email to PLAINTIFF Richard Shaon, "Nothing to worry about, they are still performing great! It's just that over the last 6 months or so, they had changed around how to deal with maturities, and I want to be sure I have the most up to date info. I'll email (you)…once I get off that call and gather all the intel. Hope you guys have a great weekend!"

280.     As a result of the aforesaid acts of negligence of DEFENDANTS, PLAINTIFFS were damaged by reason of the loss of the monies they contributed to the investments, as well as the loss of their property, money, and expenses and attorney fees necessary to get their money back.

281.     As a result of the above acts, PLAINTIFFS also claim general damages for mental and emotional distress, pain, and suffering, caused by DEFENDANTS, subject to proof at the time of trial.

282.     DEFENDANTS' conduct was a substantial factor in causing PLAINTIFFS' harm as described above. PLAINTIFFS seek reimbursement not just for their losses plus interest but for the costs and expenses of dealing with this investment.

283.     PLAINTIFFS seek all other damages allowed by law for the above-mentioned wrongdoing including costs of suit, investigation, and attorneys' fees.

81

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

## PRAYER FOR RELIEF

Wherefore, PLAINTIFFS pray for judgment against the DEFENDANTS as follows:

1.      For general damages of no less than $20,000,000 and according to proof at trial;

2.      For special damages according to proof at trial;

3.      Damages including for pain suffering and mental anguish;

4.      Return of PLAINTIFFS' money with interest;

5.      Rescission/return of all money plus interest;

6.      Punitive damages as allowed by law;

7.      For costs of suit incurred herein; and attorney fees as allowed by law;

8.      For such other and further relief as this Court deems just and proper.


Dated: August 18, 2023          _J. Owen Murrin_____

                                J. Owen Murrin
                                Attorney for Plaintiff

THIRD AMENDED COMPLAINT INCLUDING CLASS ACTION ALLEGATIONS

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the above document with the Court's CM/ECT system, which will electronically send a true and correct copy of it to all participants in this case.

Respectfully submitted,

Dated August 18, 2023                    MURRIN LAW FIRM

*J. Owen Murrin*
_____
J. Owen Murrin
Attorney for Plaintiffs

OPPOSITION TO DEFENDANT'S MOTIONS TO DISMISS PLAINTIFFS' SAC